**John G. KITCHENS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17964.**

Court of Criminal Appeals of Oklahoma.

Aug. 17, 1973.

Rehearing Denied Sept. 14, 1973.

Stephen Jones, Mary E. Bane, Enid, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Presiding Judge:

In the District Court of LeFlore County, Case No. CRF–71–123, appellant, John G. Kitchens, hereinafter referred to as defendant, was charged, tried and convicted for the offense of Forgery in the First Degree. His punishment was fixed at seven (7) years imprisonment. From that judgment and sentence, a timely appeal has been perfected to this Court.

At the trial Tom Ferguson, LeFlore County Treasurer, testified that the LeFlore County Treasurer's Office serves as treasurer for the Fanshawe School District located at Poteau, Oklahoma. After completely describing the office procedure in handling claims presented and warrants is-sued for disbursements of funds maintained for Fanshawe, Ferguson testified that on August 13, 1971, State's Exhibit 1, a $1,000 registered claim upon the Building Fund of School District 39, Fanshawe School District, was presented to his office, accompanied by the issuance of a warrant, State's Exhibit 2, authorizing payment of the above claim. Without objection of counsel, Ferguson further identified State's Exhibits 3 through 6 as claims and warrants drawn upon the above mentioned Building Fund Account in the same manner as State's Exhibits 1 and 2.

Lou Ella Hoffman, Deputy Treasurer for LeFlore County, identified State's Exhibits 1 and 2 as a claim and warrant respectively personally presented by defendant and drawn upon the Fanshawe School District Building Fund Account payable to Central Supply Company for two Bell and Howell Motion Picture Projectors with accessories. Without objection of counsel, she identified State's Exhibits 3 and 4 as a claim and warrant presented by defendant the same day as State's Exhibits 1 and 2. Also without objection of counsel, she identified State's Exhibits 5 and 6 as a claim and warrant presented subsequent to that date. Prior to registering these warrants, because of apparent irregularities in the signatures of the clerk and president of the school board, she contacted Mr. J. T. Rana and Mr. Tom Chaplin, who viewed the warrants and noted some of the irregularities.

Claude Branscham, Principal of the Fanshawe School District, identified State's Exhibit 9 as the standard warrant used in withdrawal of funds to defray expenses of the Board. Branscham testified State's Exhibit 9 was the form regularly used in the purchases of the nature represented in State's Exhibits 1 and 2 rather than the form represented by State's Exhibits 1 and 2. He further described in detail the difference in physical characteristics of the two forms.

Sy Taylor, Manager of the Central Book and Supply Company, Ada, Oklahoma, tes-

tified State's Exhibits 1 and 2 indicated a warrant for the purchase of a Bell and Howell Projector. Further, he stated in his business he did not sell Bell and Howell Projectors and consequently, would be unable to make such a sale to the Fanshawe School District. Taylor testified that on the reverse side of these exhibits there appeared an endorsement, "Sy Taylor, For Deposit Only, # 1601076." Taylor testified that the endorsement was not his endorsement; that he never received a thousand dollars; and that he did not consent to have someone other than himself endorse the instrument.

Mike Snapp, President of the Poteau State Bank, identified State's Exhibit 10 as a deposit slip indicating a deposit to defendant's special account # 1601076. Listed on the deposit slip were two checks, one for $1481.70 and the other for $1,000.00. Without objection of counsel, Snapp also testified to dispersals from the account which indicated expenditures for personal items of defendant.

Marilyn Jordan, a teller at the Poteau State Bank, identified the handwriting endorsement on State's Exhibit 2 and testified it appeared the same as defendant's hand.

Tom Chaplin, Clerk of the Fanshawe School Board, identified State's Exhibit 9 as the blank form used by the Board to pay Board obligations. Chaplin identified State's Exhibit 2. Further, he stated the signature on the warrant purportedly his signature as Clerk was not entered by him personally nor was anyone authorized to enter his signature in his stead. Further he stated, State's Exhibit 1, the claim, was never presented to the Fanshawe School Board. Without objection of counsel, Chaplin finally identified State's Exhibits 1 through 4 as claims not authorized by the Fanshawe School Board and warrants upon which the signature purportedly his were not personal signatures of his own.

J. T. Rana, President of the Fanshawe School Board, testified the signatures purportedly his upon State's Exhibits 2, 4 and 6, as President of the School Board, were not his signatures nor did he allow anyone permission in his stead to place his signature on those instruments. Further, he identified State's Exhibit 9 as the usual form he signed rather than State's Exhibit 2.

Jim Nix testified he conducted an audit of the Fanshawe School District. The audit revealed the transaction evident by State's Exhibits 1 through 6 were never authorized. Further, without objection of counsel, he testified a check for $15.80 to Sullivan Drugs; a check for $54.00 to Union Mutual Insurance Company; and a check for $10.00 to Hay and West; and a check for $10.00 to Tibbets and Moore were not authorized disbursements. Finally, without objection of defense counsel, he testified to other irregularities revealed in the audit.

Malinda Babb identified State's Exhibits 13 through 16 as samples of defendant's handwriting.

Verna Doyle, a part-time employee in defendant's office, identified State's Exhibits 13 through 16 as samples which appeared to be in the same handwriting as defendant's.

Al Brazeal testified he did not endorse State's Exhibits 3 and 4, nor did he authorize anyone to do so in his stead.

Jess Hurlocker, LeFlore County Deputy Sheriff, testified he obtained a London letter from defendant on February 17, 1972, marked and identified as State's Exhibit 17.

Bob Travis, Questioned Documents Examiner for the Oklahoma State Bureau of Investigation, testified that in his own opinion State's Exhibits 1 through 6 were written by the same person who wrote the London letter sample, State's Exhibit 17.

Don Kite, Special Agent for the Federal Bureau of Investigation, testified he arrested defendant on an unlawful flight to avoid prosecution charge in Durant, Oklahoma. At the time of arrest, the defend-

ant stated he was in transit returning to Poteau, Oklahoma.

Thereafter, the State rested.

Defendant testified he did not forge another's name to the vouchers admitted as State's Exhibits 1 through 6. Further, he testified that during the year 1971 he consumed large quantities of alcohol and prescription drugs and that further, he did not draw a complete sober breath during that period. Defendant explained the funds derived from the deposit of State's Exhibits 1 through 6 were applied to a debt owed on a school bus purchased from Al Brazeal. Finally, defendant stated on the morning of December 6, 1971, he left for work as usual and he completely lost memory of events that transpired between his leaving for work and his arrival in Austin, Texas. While in Austin, Texas, defendant testified he was in the care of the Salvation Army. Thereafter, the defense rested.

On rebuttal Tom Chaplin testified upon discovery of the unauthorized withdrawals represented by State's Exhibits 1 through 6, he and J. T. Rana approached Kitchens as to the disposition of the funds. Chaplin stated that defendant in response to their questioning told them he used the money to pay an accrued account for the school bus purchased by the School District. Upon their demand, however, he was unable to produce a receipt for the payment nor did he refund the withdrawals represented by State's Exhibits 1 through 6, the alternative to producing a receipt.

J. T. Rana testified he did not make arrangements with defendant to apply State's Exhibits 1 through 6 to the purchase of a school bus. Further, Rana testified he did not authorize defendant to make a deposit of State's Exhibits 1 through 6 in his superintendent's account. Rana testified defendant stated he would give a receipt for the money he paid on the school bus account, but never produced it. Further, Rana stated he never observed defendant under the influence of intoxicants during this period.

Don Kite, the arresting officer, testified he did give defendant Miranda warnings contrary to defendant's testimony. At the time of arrest, Kite testified defendant was not under the influence of intoxicants.

Thereafter, the State rested.

■ In defense counsel's first proposition he submits the evidence submitted on behalf of the State of Oklahoma was insufficient. He specifically points to the fact that certain exhibits were never admitted into evidence at the trial. The original transcript of proceedings below was filed in this Court on the 5th day of February 1973, and admittedly did not show the exhibits in question to have been admitted. However, on the 17th day of May 1973 the State filed an application to supplement the record alleging that due to inadvertence and mistake, the transcript on file was incomplete. The application asked this Court to supplement the trial transcript to include a corrected page 13 of the transcript. On the 26th day of June 1973, this Court issued its order granting the State's application and directed that the record be supplemented by adding certain words to page 13 of the transcript in accordance with the certificate of the court reporter. Corrected page 13 of the trial transcript reflects the following:

"MR. WARREN: Your Honor, at this time, the State will offer into evidence Exhibits 1 through 6.

"MR. SULLIVAN: Your Honor, the defendant will have to object to the introduction of the exhibits except 1 and 2. They are the only two that relate to the charge in the Information reciting the $1,000.00 voucher, No. 31 is all he is charged in the Information.

(Counsel approach bench)

"THE COURT: I believe they would be admissible, Mr. Sullivan. Your objection is overruled.

"MR. SULLIVAN: Exceptions.

"THE COURT: Exceptions allowed.

"MR. WARREN: No further questions."

It is unfortunate that counsel for the defense on this appeal did not represent him in the trial court. Had he done so, he undoubtedly would not have raised this question on appeal. Counsel bases his entire argument on the fact that the exhibits were never admitted into evidence. The corrected record clearly shows that the exhibits were in fact admitted and were properly a part of the evidence considered by the jury in determining whether or not the defendant was guilty as charged. For this reason, we find defense counsel's first proposition to be without merit.

In defense counsel's second proposition it is submitted the punishment imposed was the product of an impassioned jury as the rebuttal testimony of Agent Don Kite constituted an evidentiary harpoon. At page 227 of the transcript of trial the complained of answer is found:

"A. I'm sure we had a general conversation. I cannot recall the body of it. He told me he had been working as a cook down in Texas. I questioned him as to the whereabouts of the revolver he was alleged to have had, not a revolver but a weapon . . .

"MR. SULLIVAN: Your Honor, I'm going to ask for a mistrial right there, based on what he just said. . ."

At the same page of the transcript, the following admonition of the court is found:

"THE COURT: Ladies and Gentlemen of the jury, we have gotten into a legal smog here for a minute. The Court has made rulings in regard to this. You are admonished to disregard the last three or four questions there, the question in particular that was asked of Mr. Kite. . ."

It is this Court's opinion that the testimony complained of in the instant case is not grounds for reversal. The court's admonition to the jury not to consider the remarks of counsel, or a witness, usually cures an error unless it is of such a nature after considering the evidence that the error appears to have determined the verdict.

See Goodwin v. State, Okl.Cr., 506 P.2d 571. Considering the overwhelming weight of evidence of accused's guilt with the court's admonition of the jury not to consider the testimony complained of, this Court finds in light of the entire record the above error is harmless as it did not prejudice the jury nor influence their verdict.

The judgment and sentence is Affirmed.

BUSSEY and BRETT, JJ., concur.