Sigemonde **WIMBERLI**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–74–785.

Court of Criminal Appeals of Oklahoma.

June 4, 1975.

Douglas Garrett, Muskogee, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Jahn D. Rohrer, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Sigemonde Wimberli, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Muskogee County, Case No. CRF–73–203, for the offense of Assault and Battery With a Dangerous Weapon, in violation of 21 O.S.1971, § 645. He was sentenced to serve a term of three (3) years' imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness at trial was Patricia Ann Wimberli from whom the following facts were adduced. At the time of the trial the witness lived in Muskogee, but had been reared and educated in Chicago, Illinois. She stated that she was currently married to the defendant, but they were separated and seeking a divorce. She married the defendant in 1967 in Chicago, Illinois, and they had been separated several times during the period from 1967 until the time of trial. The last reconciliation occurred in April or May of 1973 and at this time she commenced her nursing studies at Bacone College. Just prior to the defendant's attacking her, they had contacted a

lawyer regarding a divorce and they had been advised to attempt a reconciliation. She thereafter contacted another lawyer who told her that he would like to get in touch with her husband, the defendant. On September 13, she arrived at her anatomy and physiology class at approximately 8:50 a. m. and shortly thereafter the defendant walked into the classroom, knelt down beside her, questioned her as to the whereabouts of their children, and told her that he wanted to talk to her outside. She related to him that the class was beginning, that she had missed Wednesday's class, and that she had made an appointment to see a lawyer the next day. Thereafter the defendant grabbed her and forcibly moved her through the classroom doorway and shoved her into the ladies' room. She related a statement the defendant had made at the time he dragged her into the ladies' room, which in substance states as follows: "come on here, don't make this any more difficult than it has to be." While in the restroom she heard something hit the floor and upon glancing down she noticed the filet knife case from their home. She identified State's Exhibit No. 1 as said filet knife used in their home for fileting fish. She said that in the restroom her first impulse was to pull away from the defendant and that she lowered her head thus preventing the knife from cutting her throat. When she screamed, two male instructors came into the restroom and the defendant said, while holding her arms, "you, you get back." During the incident she sustained several cuts to the hands, shoulder blade and neck. She was hospitalized for six to seven weeks as a result of this incident and during this time she was treated by Dr. John Branscum.

Dr. John L. Branscum testified he was an orthopedic surgeon in Muskogee, whereupon his qualifications as an expert witness were stipulated to by the parties. He testified he had occasion to observe Patricia Ann Wimberli in the emergency room at which time he stated she appeared to be in a hysterical state and her body was covered with blood. He further testified that an examination revealed multiple lacerations located in the areas of the chin, neck, hand, breast and arm. He characterized the wounds about the neck and chin, thumb, breast and forearm as deep wounds. The other wounds, he stated, were superficial lacerations. He lastly testified that in his opinion the wound in her breast was a stab wound and his records reflected that she was hospitalized from September 13, 1973 to September 28, 1973, and at two subsequent times.

Robert Eyer testified that he was employed as a biology teacher at Bacone College and was so employed on September 13, 1973, and that Patricia Ann Wimberli was one of his students. He further testified that on that day Mrs. Wimberli came into his classroom at about 10:10 a. m. and thereafter the defendant entered, approached her, and began to talk quietly with her. He further stated that at about 10:30, the time for the second laboratory section to begin, the defendant forcibly dragged Mrs. Wimberli out of the classroom and he immediately proceeded to call the police. While walking to call the police, he observed the defendant drag Mrs. Wimberli into the restroom at which time he heard cries for help. Upon returning from making the call he observed Mrs. Wimberli in the hallway bleeding profusely from many wounds. He testified that he and two nursing instructors took Mrs. Wimberli into another room and rendered first aid, and that thereafter she was taken to the hospital for treatment. He stated that at this time he observed what he believed to be a fish filet knife, and upon being shown State's Exhibit No. 1, he related it appeared to be the knife he had seen at that time. He at no time noticed or heard Mrs. Wimberli make any threats or exhibit any force against defendant.

Robert Ferree testified that he was a teacher and was chairman of the Humanities Division at Bacone College and was so employed on September 13, 1973, when he heard a strange noise that morning. Upon

investigation, he saw Mr. Webb, another instructor, enter the restroom. He followed Mr. Webb and observed the defendant wielding a knife and struggling with a woman. Thereafter he immediately called the police. He stated that upon returning to the restroom the defendant no longer had the knife and the woman was getting up and walking out with the assistance of the nursing instructors, at which time she appeared to be covered with blood.

Luke Bluebird testified that on September 13, 1973, he was a student at Bacone College. On that morning he observed a male and female struggling and later observed the female bleeding from lacerations. He further testified that he attempted to help two men take the knife from the defendant and that the defendant tried to cut one of the instructor's legs. Upon being asked if he had heard either one of the struggling parties make a statement at that time, he testified he heard the defendant say, "I can't have you, nobody else can," or something to that effect. (Tr. 92)

Paul Webb testified he was an instructor at Bacone College and was so employed on September 13, 1973. On that date after hearing screams he went to the restroom door and there he saw Mrs. Wimberli with the defendant standing over her waving a fish filet knife. He further testified that he succeeded in restraining the defendant and knocking the knife from his hand. He observed blood about the restroom and the defendant was "cutting" at Mrs. Wimberli.

Willard Butcher testified that he was a Detective with the Muskogee Police Department and was so employed on September 13, 1973. Upon being shown State's Exhibit No. 1, a knife, he identified the exhibit as the same knife which was in the room where the defendant was being held on September 13, 1973. State's Exhibit No. 1 was then admitted into evidence.

The first witness for the defense was Alma Love, who testified that she was employed as supervisor for the Lloyd E. Rader Children's Center in Sand Springs and that previously she had worked at Taft in Muskogee County as an attendant for mental patients. She further testified she had known the defendant for the past 15 years. and had been the defendant's neighbor for the past two years. She stated that the defendant's reputation in the community for truth and veracity was good and that he also had a reputation in the community as being a peaceful person.

Amis Yerger testified she was a retired teacher, that she had previously taught the defendant in grade school and high school, and had known him all of his life. She stated the defendant's reputation in the community was good and that the defendant was known to be a peaceful and law-abiding person.

Vinnie Freeman testified that she had known the defendant since his childhood, his reputation in the community was good, and he was known to be a peaceful person. She further testified the defendant was active in the Mt. Zion Baptist Church, had taught in the junior class, and also aided as a volunteer in the building of a new addition at the church.

Owen Howell testified he had known the defendant all his life and the defendant was active in the church. Further, the defendant had taught Sunday School and volunteered his services for the building of a new addition to the church. He testified that the defendant's reputation in the community for truth and veracity was good.

The defendant took the stand and testified in his own behalf. He testified that he presently lived in Tahlequah, Oklahoma, and was pursuing a degree in English Education and Journalism at Northeastern State University. He stated he was married to Patricia Ann Wimberli on December 16, 1968, in Chicago, Illinois, and that since that time they had had marital difficulties and had been separated on several different occasions. He stated that the fish filet knife which had been introduced into evidence was normally kept in the kitchen drawer in his house in Boynton, and that he had never carried it. Upon

being questioned about the trouble he had had at Bacone College, he testified that he had no recollection of it, that he had tried to remember, and that all he knew about it was what he had read in the newspaper and what he had heard in court.

In rebuttal, Patricia Wimberli testified that she had seen the defendant on the previous Saturday in Oklahoma City. She further testified that on the day she was attacked the defendant appeared to be acting normally and that the statement he·made to her was in his usual manner of speech.

In surrebuttal, the defendant testified he was not in Oklahoma City on the previous Saturday.

Defendant's first proposition asserts that the court erred in not granting the defendant's application for a mental examination, and in refusing to grant a continuance so that a mental examination could be made. The defendant's complaint is apparently premised on 22 O.S.1971, § 1162, which provides for a jury hearing when a legal doubt of defendant's sanity arises, and also on 22 O.S.1971, § 1172, which affords the trial court the power to commit the defendant for mental examination at the state hospital after the trial judge has determined a doubt of the defendant's present sanity exists as raised by application by the district attorney or defense counsel.

■ In the instant case, the trial judge overruled defense counsel's oral application to commit the defendant for mental examination. Judge Haworth's statement at the conclusion of the hearing on this issue appears in the record as follows:

"THE COURT: I appreciate that, Mr. Watkins. That will be over-ruled on three grounds and three reasons. This case was filed in September of 1973. Mr. Garrett has been his attorney and still his attorney and should have brought this to the Court's attention before this late date. Number two, now no criticism of Mr. Garrett. Possibility this man didn't exhibit the same behavior to Mr. Garrett that he has to Mr. Watkins. Number two, his own testimony was he felt like his education should not be interrupted. He felt that the cost and horrors of the Oklahoma State Penitentiary would turn him into an animal.

"Number three, I think he is a highly intelligent man making three point three (3.3) average. He has a newspaper reporting prior to his being charged with this crime, and for him—he said in passing on him and in your conversation, if I heard his testimony, 'Well, if they are going to give me four or five years in the penitentiary then might as well execute me either by the electric chair or have a deputy take me out in the hall and shoot me in the head.' Isn't that correct, Mr. Wimberli?

"MR. WIMBERLI: Yes, sir.

"THE COURT: I think he is a highly intelligent person. We will go to trial as quick as we can get a jury." (Tr. 13–14)

In Bingham v. State, 82 Okl.Cr. 5, 165 P. 2d 646 (1946), this Court enunciated the well established rule of law that sanity is always presumed and the burden is on the person raising the issue.

■ We disagree with the trial judge on the validity of one ground of his ruling, specifically in his statement that the issue should have been previously raised by defense counsel and, therefore, impliedly saying such an application was not timely. We must emphasize that the issue before the trial court is always, in these circumstances, the *present* sanity of the defendant. However, this was not the only ground upon which the application in the instant case was denied. The trial judge was present to observe personally the demeanor of the defendant and to weigh evidence in support of the oral application. The supportive evidence was only the de-

fense counsel's statement, which appears in the record as follows:

"MR. WATKINS: Can I make a statement? I would like for the record to reveal that I had objected first of all to this case going to trial on the basis in my opinion this man in my limited opinion inexperienced opinion is in need of medical observation; and harm for putting him to trial without first having him examined far exceeds the delay it might cause. In my opinion he should be at least afforded the opportunity to be examined by someone competent in the field before he is put to trial, and without his knowing whether he is able to aid in his own defense." (Tr. 12–13)

This Court has previously held on many occasions the trial court has to be advised from reputable sources that the defendant is insane under oath. See Bingham v. State, supra. Also stated in Johnson v. State, 73 Okl.Cr. 370, 121 P.2d 625 (1942), wherein this Court said in the Syllabus by the Court:

" . . . while the court cannot act arbitrarily in the matter, it has the right to look to the source of the information, and come to a proper conclusion, from all the facts and circumstances, whether there is a doubt in his mind as to the sanity of the defendant. . . . "

We do not feel that the evidence in the instant case was sufficient to create in the trial judge's mind a legal doubt of the defendant's present sanity and, finding no abuse of discretion, such a ruling will not be disturbed on appeal. For the reasons stated, we find the defendant's proposition to be without merit.

Defendant's second proposition asserts the court erred in refusing to grant a continuance and forcing the defendant to trial before a proper defense could be prepared, ordering the trial to begin, although the defense attorney and defendant met for the first time on the day of the trial. Defendant contends that at no time was an attorney-client relationship established between him and his counsel and, as a result of this, he has been denied effective assistance of counsel which must be afforded him through the Sixth and Fourteenth Amendments to the United States' Constitution, and Article II, Section 20, of the Oklahoma Constitution.

In the instant case the record reflects that Douglas Garrett was present as counsel for the defendant at the initial appearance on September 17, 1973, as retained counsel of the defendant, and that later Mr. Garrett was appointed, along with Mr. Watkins, to represent the defendant. The record further reflects that Mr. Garrett continued as counsel for the defendant and was absent during the proceedings at trial only during the voir dire of the jury. After this he was continuously present, representing the defendant and was appointed to represent the defendant on appeal. His only absence was anticipated by the court as evidenced by Mr. Garrett's application to withdraw and said application being heard on May 24, 1974. This is revealed in the record of the proceedings at the beginning of trial wherein it states:

"THE COURT: Let the record show that Mr. Eversole and Mr. Leeds appears for the State of Oklahoma, and Mr. Wimberli appears with his Court appointed counsel Mr. Max Watkins. For the record, Mr. Wimberli, last week, say on Wednesday or Tuesday or Monday, Tuesday or Wednesday Mr. Garrett filed an application in this Court to ask that he be able to withdraw from your case.

"Mr. Watkins is an excellent trial attorney, and we heard this on Friday. I am not criticising you for not being here because there's a possibility that you did not get notice. So, I appointed Mr. Watkins to assist in this trial as Court appointed and Mr. Garrett will be back here supposedly between eleven and twelve o'clock to help you with the trial." (Tr. 6)

We note further that the United States Supreme Court has held that even the ap-

pointment of an attorney not familiar with the case on the day of trial is not, per se, an effective denial of assistance of counsel, absent a showing of prejudice. See, Chambers v. Maroney, 399 U.S. 42, 90 S. Ct. 1975, 26 L.Ed.2d 419 (1970) and cited with approval in Williamson v. State, Okl. Cr., 532 P.2d 444 (1975).

We feel that counsel Garrett's absence at the proceedings just prior to the opening statements at trial in no way prejudiced the defendant in light of the counsel's statements as reflected in the record as follows:

"MR. GARRETT: Permission of the Court and you ladies and gentlemen of the jury: I will be very brief, but before I make any remarks about the lawsuit I want to thank Judge Haworth in allowing me to finish a lawsuit I had in Tulsa, and other wise (sic) I would have been with you at nine o'clock when he opened up here; and I told Max Watkins to defend Wimberli, that I couldn't have done a better job if I had been here myself because I would have picked every one of you. Thank you for your patience with him this morning and kindness to us this afternoon. We were appointed by the Court to represent Wimberli, and we will have several good witnesses from Boynton to testify as to his character, that he is not a lawless outlaw as Mr. Leeds would picture him, that he is a man of good reputation; and as far as my personal knowledge has never had any trouble before except he has been having a lot of trouble with his wife. Of course, Jesse wasn't there and I wasn't either." (Tr. 25–26)

In light of the foregoing stated events which transpired in the representation of the defendant, we feel the defendant has failed to establish that such events prejudiced him or in anyway denied him effective assistance of counsel. This Court has repeatedly held that motions for continuance are directed to the sound discretion of the trial court and, unless abuse of such discretion appears clearly, the trial court's refusal to grant a continuance will not be disturbed. See, Mahan v. State, Okl.Cr., 508 P.2d 703 (1973).

■ The defendant's third proposition, not being supported by any authorities, will not be considered. This Court has repeatedly held that is is necessary for plaintiff in error not only to assert error, but to support his contentions by both argument and the citations of authorities; and where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this Court will not search the books for authorities to support the mere assertion of error. See, Collins v. State, Okl.Cr., 407 P.2d 609 (1965), and Sandefur v. State, Okl.Cr., 461 P.2d 954 (1969).

■ Defendant's final proposition asserts that he was denied a fair trial as a result of the improper and prejudicial remarks and conduct of the prosecuting attorney. The first instance of which the defendant now complains occurred during the State's opening statement when the District Attorney displayed a knife which was used in the alleged crime and which was later admitted into evidence as State's Exhibit No. 1. The defendant further complains of another comment by the prosecutor during the opening statement relating to an alleged choking incident involving the defendant and the complaining witness which had supposedly taken place one week prior to the actions for which the defendant was being tried. The defense counsel's objection to the remark was sustained and the jury was admonished to disregard the reference to the choking incident. Defendant further argues that the prosecutor elicited a second mention of the alleged choking incident at the time the prosecutor was questioning the complaining witness. Again the defense attorney's objection was sustained and the jury was admonished. This Court has previously held that when a trial court admonishes the jury not to consider the remarks of counsel, or a witness, this admonition usually cures an error unless it is of such a

nature, after considering the evidence, that the error appears to determine the verdict. See, Kitchens v. State, Okl.Cr., 513 P.2d 1300 (1973). In light of the overwhelming evidence of guilt in the instant case we feel such remarks were not instrumental in the jury's reaching their verdict. We further find that the conduct of the District Attorney in displaying the weapon during the opening statement may not be the model for emulation, but this Court has repeatedly held that for remarks of the prosecuting attorney to constitute reversible error, they must be flagrant in such a nature as to be prejudicial to the defendant. See Battle v. State, Okl.Cr., 478 P.2d 1005 (1970); Dupree v. State, Okl.Cr., 506 P.2d 974 (1973), and Kite v. State, Okl.Cr., 506 P.2d 946 (1973). We find no prejudice occurred as a result of the prosecution's remarks.

 The next instances of which the defendant complains is the prosecutor's articulation of the alleged crime as a shocking incident. The two instances occurred during the closing argument. The defendant further argues that during the closing argument the prosecutor made two additional improper comments; one, in his reference to the Martial Sincu and Patty Hearst case, and the other in his comments referring to the defense as being weak and flimsy, and asking for conviction so that the defendant would not be allowed to "weasle out of this."

In Harvell v. State, Okl.Cr., 395 P.2d 331 (1964), and on many other occasions, this Court has stated:

> "The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration and argumentation is wide. Counsel for both the State and the defendant have a right to discuss fully from their standpoints the evidence and the inferences and deductions arising therefrom. It is only when argument by counsel for the State is grossly improper and unwarranted upon some point which may have affected defend-

ant's rights that a reversal can be based on improper argument."

We have carefully examined the closing argument of the District Attorney and we are of the opinion that there is nothing in the record to indicate that the remarks of which the defendant now complains were in bad faith, or were prejudicial to the defendant. We find this proposition to be without merit.

In conclusion, we observe that the record is free of any error which would justify modification or reversal. The judgment and sentence is, accordingly, affirmed.

BUSSEY, J., concurs.

BRETT, P. J., concurs in results.