Tommy Monroe POST, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–681.

Court of Criminal Appeals of Oklahoma.

May 5, 1977.

Tommy Monroe Post, pro se.

Larry Derryberry, Atty. Gen., Ross N. Lillard, III, Asst. Atty. Gen., for appellee.

OPINION

BUSSEY, Presiding Judge:

Tommy Monroe Post, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–75–4107, for the offense of Burglary in the Second Degree, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1435, and 21 O.S.1971, § 51. His punishment was fixed at a term of fourteen (14) years' imprison-

ment and from said judgment and sentence an appeal has been perfected to this Court.

At the trial, Richard A. Boles testified that on November 1, 1976, at approximately 7:30 p. m., he went to the Apollo Twin Theatre in Midwest City; he parked his car in the parking lot, after first locking it. He returned to the car at approximately 9:30 p. m. and discovered that it had been broken into and a maroon windbreaker, a CB radio and two floormats were missing from the vehicle. He observed persons around a car approximately thirty feet away from his vehicle. He discovered that two of the persons were police officers and informed them of the break-in. One of the officers returned with him to his car. They observed scratches on the window and molding and small flakes of white paint. The officer asked him to accompany him to a 1969 Chevrolet, where he saw his maroon windbreaker laying in the backseat under a white coat hanger. He subsequently gave the officers the serial number of his CB radio.

Officer William Kaiser testified that on November 1, 1976, at approximately 9:30 p. m., he and his partner, George Swearingen, arrived at the parking lot of the Apollo Theatre. They cruised through the parking lot slowly to check for any possible auto burglaries that might be in progress. He observed a Ford van with a CB antenna and immediately next to it, a 1969 Chevelle with the motor running and two people standing beside it. He approached the Chevelle and observed the defendant sitting on the passenger side. He identified himself and asked defendant what they were doing in the area. Defendant replied that their car was not running properly. He testified that in his opinion there did not seem to be anything unusual about the way the car was running. He observed a nylon windbreaker and a straightened out coat hanger laying in the back seat of the car. He asked defendant to come to the police car and have a seat in the back. He explained to the defendant the reason for his inquiries. Richard Boles approached the police unit and reported the break-in of his car.

Officer Swearingen went with Boles to his car and then to the 1969 Chevelle. Boles looked inside the car which still had the passenger door open. Officer Swearingen removed a maroon windbreaker from the vehicle. After being advised that Boles identified the windbreaker, he placed defendant under arrest. A wrecker was called and the Chevelle was impounded. The following day he obtained a search warrant for the Chevelle. He identified State's Exhibits 8 and 9 as floormats found in the right passenger compartment of the vehicle, which had previously been identified by Richard Boles. He further identified State's Exhibits 2 and 3 as screw drivers, Exhibit 6 as a pocket calculator and Exhibit 7 as a CB radio which were all found in the vehicle.

Officer George Swearingen's testimony did not differ substantially from that of Officer Kaiser. He identified State's Exhibit 5 as a CB radio found in the trunk of the Chevelle which serial number matched the serial number furnished him by Richard Boles.

Donald Bradley testified that certain items of personal property were removed from his car on November 1, 1975 between 8:00 and 9:00 p. m. He stated that his car was parked at the Holiday Inn, approximately a mile and one-half from the Apollo Theatre parking lot. He identified State's Exhibit 6 as his calculator and Exhibit 7 as his CB radio which had been removed from his vehicle.

For the defense, co-defendant Billy Key testified that on the evening in question he went to the Apollo Theatre for the purpose of seeing a movie. He arrived early and started working on his car, as it was not running properly. He observed defendant coming through the parking lot and asked him to help work on the car. He testified that defendant did not leave his sight while they were working on the car. The police arrived approximately ten minutes after he met defendant.

In rebuttal, Officers Swearingen and Kaiser testified that co-defendant Key did

not inform them as to when he met defendant in the parking lot.

■ Defendant asserts, as the first assignment of error, that his arrest was unlawful and all evidence obtained as a result was inadmissible. We must disagree. The record reflects that the officers were in the parking lot checking on possible auto burglaries of CB radios. They observed the 1969 Chevelle parked very close to a white van equipped with a CB antenna. The door to the Chevelle was open and the motor was running. Officer Kasier approached the car and observed defendant sitting on the passenger side. He identified himself as a police officer and asked the defendant what they were doing, to which defendant replied that they were having car trouble. He could not detect any unusual noise coming from defendant's vehicle. He observed a bent white coat hanger laying on a nylon windbreaker in the back seat of the vehicle. He requested defendant and co-defendant to accompany him to the police car to further discuss their reason for being in the parking lot. During the course of the short conversation, Richard Boles appeared and informed the officers that his car had been burglarized. Officer Swearingen observed white paint on the window of Boles' vehicle. Boles subsequently observed his windbreaker in the back seat of the Chevelle. Defendant and co-defendant Key were then placed under arrest.

In *Prock v. State*, Okl.Cr., 542 P.2d 522 (1975), we stated:

". . . Under appropriate circumstances police officers, in the course of their duty, may approach and question suspicious individuals in order to determine their identity or to maintain status quo momentarily while obtaining more information, even though there are insufficient grounds for arrest. See, *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) and *United States v. Saldana*, 453 F.2d 352 (10th Cir. 1972), and cases cited therein."

We, therefore, conclude that because of the suspicious actions of the defendant and co-defendant, under the circumstances presented, that the officers were justified in temporarily detaining them to obtain more information. During the course of this detention, the officers became aware that a felony had been committed and had reasonable cause to believe that the defendants had committed such offense.

■ Defendant contends, in the second assignment of error, that the prosecuting attorney "knowingly, willingly and intentionally" used State's witnesses on direct examination to divulge prejudicial information concerning defendant's prior arrest. The record reflects that during direct examination of Officer Kaiser, the following occurred, at pages 19 and 20 of the transcript:

"Q. Detective *Swearingen* [should be Kaiser], and let me hand you what has been marked Exhibit Number Four and ask you if you can identify it?

"A. Yes, this is the same windbreaker I observed lying in the back seat on the seat.

"Q. How is it that you can identify it?

"A. It is marked with our property tag and also with the property number on it, on the small tag.

"Q. What did you then do?

"A. When Mr. Post produced his identification I recognized the name as being the person that I was acquainted with. A person I had on previous occasions received information and was involved in burglary and which I had—

"MR. TUDOR: Your Honor, I object.

"THE COURT: I am going to sustain that.

"MR. TUDOR: May I approach the bench, please.

"THE COURT: I'm going to sustain it.

"MR. TUDOR: Yes, sir; but I want to make a record.

"(OUT OF THE HEARING OF THE JURY:)

"MR. TUDOR: Comes now the defendant —first, comes now the defendant and asks the court to admonish the jury to disregard the statement of the police officer whereupon he stated and indicated

that this man had previously been arrested, or had been the subject of an investigation of prior burglaries.

"(WITHIN THE HEARING OF THE JURY:)

"THE COURT: I am going to sustain that. The jury will disregard the witness's testimony as to how he knew him of past—as he testified. He can testify he has known him by reputation, but he can't go into that. So, you are admonished not to consider that statement."

We agree with defendant's contention that the mention of his prior arrest is error [1]; however, we disagree with defendant that the prosecuting attorney knowingly, willfully and intentionally elicited such an answer from the witness. It is readily apparent that the officer's answer was not in response to the question propounded.

We would further observe that the trial court properly sustained defendant's objection and admonished the jury not to consider the witness' voluntary remarks. In *Wimberli v. State*, Okl.Cr., 536 P.2d 945 (1975), we stated:

". . . This Court has previously held that when a trial court admonishes the jury not to consider the remarks of counsel, or a witness, this admonition usually cures an error unless it is of such a nature, after considering the evidence, that the error appears to determine the verdict. See *Kitchens v. State*, Okl.Cr., 513 P.2d 1300 (1973). . . ."

We have carefully considered the evidence in the instant case and are of the opinion that the remarks could not have caused the jury to have found the defendant guilty.

■ Defendant next asserts that the evidence was insufficient to support the verdict of the jury. We have consistently held that where there is competent evidence in the record from which the jury could reasonably have concluded that the defendant was guilty as charged, this Court will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. See *Sanders v. State*, Okl. Cr., 511 P.2d 591 (1973). Based upon the foregoing statement of facts, we are of the opinion that there was sufficient evidence in the record from which the jury could conclude that the defendant was guilty as charged.

■ Defendant finally contends that the trial court erred in allowing testimony of witness Bradley concerning another offense. Defendant bases this contention of the general rule that when a defendant is put upon trial for one offense, he should be convicted by evidence which shows he is guilty of the offense for which he is charged, and evidence which in any manner shows, or tends to show, that he has committed another crime wholly independent of the offense of which he is charged, is irrelevant and inadmissible.

We need only observe that defendant has failed to consider the exceptions to the general rule. We have consistently held that evidence of separate and similar offenses is admissible when it is material and proper to show (1) motive, (2) intent, (3) absence of mistake or accident, (4) identity of person charged with commission of a crime for which accused is put on trial, and (5) common scheme or plan embracing two or more crimes so related to each other that one tends to establish the other. See *Hogan v. State*, Okl.Cr., 530 P.2d 1026 (1975). Considering the similarity of the offenses, the proximity of the two vehicles and the time span, we are of the opinion that the evidence was admissible as falling within the exceptions to the general rule.

For all the reasons set forth above, we are of the opinion that the judgment and sentence appealed from should be, and the same is hereby, AFFIRMED.

BLISS, J., concurs.

BRETT, J., concurs in results.

---

1. *Harris v. State*, Okl.Cr., 369 P.2d 187 (1961).