Ronald Keith THOMPSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–139.

Court of Criminal Appeals of Oklahoma.

Aug. 5, 1977.

John T. Elliott, Public Defender, Oklahoma County, Oklahoma, John M. Stuart, Asst. Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., Bill Bruce, Asst. Atty. Gen., for appellee.

OPINION

BUSSEY, Presiding Judge:

Ronald Keith Thompson, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–76–395, for the

offense of Robbery With Firearms in violation of 21 O.S.Supp.1973, § 801. His punishment was fixed at thirty (30) years' imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Tom Goodwin testified that on October 16, 1975, he was employed at the Southgate Inn Motel in Oklahoma City; and that at approximately 4:00 a.m., a man whom he identified in court as defendant entered the motel and asked directions to Tulsa. Defendant produced a gun and pointed it at Goodwin. Defendant told him to "stay." Goodwin opened the cash register and defendant removed the money from the cash drawer. Defendant ordered Goodwin to go into a back room. Defendant handcuffed him and informed him to remain in the back room. Shortly thereafter, he heard the sound of a car leaving the parking lot. He went back out to the desk and called the police. It took the police approximately a half hour to remove the handcuffs because they could not find a key that would fit.

Officer Richard McDonald testified that he received a call in reference to an armed robbery at the Southgate Inn at approximately 4:02 a.m. He proceeded to the motel and found the night clerk handcuffed with his hands behind his back. He obtained a description of the robber from Goodwin. He testified that the handcuffs did not have a brand name or serial number and that a standard key would not open them.

Technical Investigator Tom Bevill testified that State's Exhibit No. 1, was similar to the handcuffs he recovered at the Southgate Motel.

Detective W. T. Jackson testified that the Ace Pawn Shop was the only establishment in town that sold handcuffs similar to State's Exhibit No. 1. He testified that he went to the Pawn Shop with a photograph of the defendant.

Defendant did not testify nor was any evidence offered in his behalf.

Defendant asserts in the first assignment of error that "the trial court erred in allowing the prosecutor, over defenses objection, to effectively elicit from the State's witness, Officer W. T. Jackson, incompetent evidence which was so damaging that the defendant's right to a fair and impartial trial was denied." The line of questioning to which defendant complains occurred during the direct examination of Detective W. T. Jackson. Jackson testified that he determined that the Ace Pawn Shop was the only establishment in town that sold handcuffs without a brand name or serial number on them. Jackson further testified that he obtained a picture of the defendant and proceeded to the pawn shop. Thereafter the following transpired:

"Q. And did you make a determination from your investigation whether Ronald Keith Thompson had purchased handcuffs like that?

"MR. OLIVER: Now, that I object as being hearsay of the pawn shop owner.

"MR. INGMIRE: It's not going to be hearsay.

"MR. OLIVER: And also move for a mistrial at this time.

"THE COURT: Are you going to have a witness here to testify?

"MR. INGMIRE: He said he took the picture, Judge. We have laid the predicate that he had a picture of the defendant. That he took that picture to the pawn shop owner. That he did, in fact, identify the picture, and that is all he said so far.

"MR. OLIVER: Your Honor, I object because if he identified the picture, I want the pawn shop owner here to testify that he identified it. Not by pure hearsay evidence. That is hearsay.

"THE COURT: That is right. His right of confrontation of cross examination.

"MR. INGMIRE: It's not hearsay, Judge. He's got a right to subpoena him here if he wants.

"MR. OLIVER: Your Honor, without the police records or anything else, I don't know anything about it.

"THE COURT: I think it is hearsay.

"MR. INGMIRE: How is it going to be hearsay, Judge?

"THE COURT: Because it is evidence of a statement made other than by a witness while testifying and offered to prove the truth of the matter stated. The statement means also conduct as well as a spoken word. And this Defendant has a right here to be confronted with that personally (sic) of who identified him in the photograph and cross examine that witness under oath, it seems to me. We are setting out here strictly on direct what he did as a part of this investigation. How can he cross examine that identification?

"MR. INGMIRE: He can—For one thing, we have got the picture here, if he wants it.

"MR. OLIVER: One picture? That is illegal.

"THE COURT: I sustain your objection. I am telling the Jury that they are not to consider the question and answer given. I think it is hearsay.

"MR. OLIVER: Thank you, Your Honor. (The following proceedings were had in open Court and in the presence of the Jury.)

"THE COURT: The objection is sustained. I have sustained the objection. You will not consider the question or the answer given. It will be stricken from the record." (Tr. 44–46).

We disagree with the defendant's contention that anything the pawn shop owner may have said to the officer is clearly hearsay. However, the trial court properly sustained defendant's objection to the improper question and admonished the jury not to consider the same. In dealing with a similar assignment of error in the recent case of *Post v. State*, Okl.Cr., 563 P.2d 1193 (F–76–681), we stated:

"We would further observe that the trial Court properly sustained defendant's objection and admonished the jury not to consider the witness' voluntary remarks.

"In *Wimberli v. State*, Okl.Cr., 536 P.2d 945 (1975), we stated:

" ' . . . This Court has previously held that when a trial court admonishes the jury not to consider the remarks of counsel, or a witness, this admonition usually cures an error unless it is of such a nature, after considering the evidence, that the error appears to determine the verdict. See, *Kitchens v. State*, Okl.Cr., 513 P.2d 1300 (1973). . . .' "

■ Defendant contends in the final assignment of error that the trial court erred in allowing the introduction into evidence of the handcuffs without a proper predicate and chain of custody being established. We do not deem it necessary to discuss whether the chain of custody of the handcuffs was properly established. The evidence was uncontradicted that Thomas Goodwin was handcuffed after being robbed. The introduction into evidence of the handcuffs would thus be merely cumulative. See, *Davidson v. State*, Okl.Cr., 550 P.2d 974 (1976). We would further observe that had the chain of custody been broken that because of the nature of the evidence, that the same would fall within the rule set forth by this Court in *Brown v. State*, Okl. Cr., 518 P.2d 898 (1974), wherein we stated:

" . . . State's Exhibit 3 is of such a character that only the barest speculation would permit one to conclude the jack had been altered or exchanged during the time it was outside the custody of the police officer. Consequently, although the chain of custody was broken, the break does not provide a ground for reversal of the above conviction. However, we note a caveat in the application of this opinion. In dealing with contraband or substances wherein a chemical analysis is necessary, and a layman would be unable to identify the substance as the same substance taken under a particular set of circumstances, a break in the chain of custody similar to the instant case would be of grave concern. . . ."

In conclusion we observe the record is free of any error which would require reversal or justify modification. The judgment and sentence is accordingly AFFIRMED.

BRETT, J., concurs.