**Richard J. DIXON, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–84–849.**

Court of Criminal Appeals of Oklahoma.

May 12, 1987.

John L. Clifton, IV, Asst. Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., William H. Luker, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Richard J. Dixon, was tried and convicted in the District Court of Love County of Attempted Manufacture of a Controlled Dangerous Substance pursuant to 63 O.S.Supp.1985, § 2–401, and 63 O.S.1981, § 2–408, and was sentenced to ten years imprisonment and a fine of five thousand dollars.

In the Fall of 1983, Dean Pearman, the owner of twenty acres in Love County, entered into a lease-purchase agreement for the property with the appellant, Richard J. Dixon. Shortly thereafter, Don Pearman, Dean Pearman's brother, an employee of the local rural electric co-operative and a former police officer, was build-ing a power line on the property and noticed suspicious activity at the site which was at that time in the possession of appellant. He notified agents of the Oklahoma Bureau of Narcotics and Dangerous Drugs who then began a surveillance of the site. As a result of their observations and Don Pearman's information, the agents obtained a search warrant for the property on January 30, 1984. During the course of their search they discovered what is commonly known as an "amphetamine lab." An arrest warrant was issued for the appellant, and he was apprehended in Texas two months later.

Sheriff Marvin Wade of Love County assumed custody of the appellant in Texas on April 5, 1984, and informed him of his constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant indicated he understood these rights and informed Sheriff Wade that he would not speak until he had obtained the assistance of counsel. On April 6, 1984, he was then transported back to Oklahoma, arraigned, and supplied a Pauper's Affadavit to obtain a court-appointed attorney. Shortly thereafter, appellant began sending notes to Sheriff Wade indicating that he wished to have a conference with the Sheriff and the District Attorney with an attorney present. On April 12, 1984, appellant met with Sheriff Wade and Assistant District Attorney Jack Barton. The Assistant District Attorney again informed appellant of his constitutional rights which appellant then verbally waived. Appellant then confessed to establishing an "amphetamine lab" on the property. His Pauper's Affadavit was filed with the District Court on April 16, 1984.

Appellant's first assignment of error is that the trial court erred in failing to sustain his motion to suppress evidence gained under the search warrant. Appellant contends this search violated his rights under the Oklahoma Constitution, Article 2, § 30.

Before we consider this State constitutional claim, this Court must first determine whether appellant has standing to contest the constitutionality of the search. To establish standing, a defendant must

show that he has exhibited an actual (subjective) expectation of privacy in the property searched, and that this expectation of privacy is objectively reasonable. *Tate v. State*, 544 P.2d 531 (Okl.Cr.1975); *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 587 (1967), (HARLAN, J., concurring). At trial, appellant was accorded standing in that the trial judge ruled on the merits of his motion to suppress. In light of the uncontroverted evidence presented at trial that appellant had entered into a lease-purchase agreement on the land searched and had made improvements thereto, we find no reason to disagree with the trial court. Where a defendant has a clear possessory interest in the land searched, he has standing to object to the constitutionality of that search. *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387, 401, n. 12 (1978). Cf. *Champeau v. State*, 678 P.2d 1192 (Okl.Cr.1984), cert. den. 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 183 (1984) (standing denied where no possessory interest shown in land).

In attacking the constitutionality of the search, appellant does not contend that it violates his rights under the Fourth Amendment. He concedes that under the "totality of the circumstances" test announced by the Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the search warrant was issued upon valid grounds. Instead, he claims that it violates the particular guarantees against unlawful search and seizure contained in the Oklahoma Constitution, Article 2, § 30. Appellant claims that the Oklahoma Constitution compels us to follow the stricter test outlined by the Supreme Court in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), which was overruled by the Court in *Gates*. We disagree.

 As this Court has repeatedly noted, this provision of our State's Constitution is derived from the Fourth Amendment to the Federal Constitution. *Degraff v. State*, 2 Okl.Cr. 519, 103 P. 538 (1909). While this Court reserves the right to interpret the particular guarantees of the Okla-

homa Constitution, we find that the decisions of the United States Supreme Court regarding the Fourth Amendment to be highly persuasive and these decisions will guide our opinions regarding search and seizure. *Long v. State*, 706 P.2d 915 (Okl. Cr.1985). See also, *State v. Thomason*, 538 P.2d 1080 (Okl.Cr.1975), (state constitutional guarantees against self-incrimination guided by the United States Supreme Court's ruling on the Fifth Amendment). Having examined the decision in *Gates*, we find that the "totality of the circumstances" test is the proper test of the legality of search warrants under the Oklahoma Constitution. There is consequently no error in the trial court's admission of the fruits of the search warrant into evidence.

Appellant's second assignment of error is that it was error to allow admission of testimony about his confession into evidence. Appellant contends this confession was obtained in violation of his Fifth and Fourteenth Amendment rights and should properly have been excluded from the evidence.

 Where a confession has been obtained after a defendant has stated that he will not speak to police without the assistance of counsel, and the police have then instigated an interrogation in disregard of defendant's exercise of his constitutional rights, the defendant has the right to suppress this confession. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). It is clear from the record that it was appellant who instigated the interview which resulted in his confession, and that the Assistant District Attorney again informed appellant of his rights before the interview began. Appellant's constitutional rights were therefore not violated, and there is no error in the admission of this testimony into evidence. *Stout v. State*, 693 P.2d 617 (Okl.Cr.1984).

Appellant's third assignment of error is that the testimony of a Texas police officer constituted an "evidentiary harpoon" which served to deprive the appellant of a fair trial.

Officer Mike Dunn of the Texas Department of Public Safety, in response to the

prosecutor's question as to where he had seen the appellant before, testified that he had seen him at a business in Dallas, and then Dunn volunteered that it was a business where some of the equipment to manufacture amphetamines could be obtained.

■ An "evidentiary harpoon" is an improper testamentary statement which consists of six factors. These are: 1) it was made by an experienced police officer; 2) it was voluntarily made and not in response to a question; 3) it was willfully made; 4) it interjects information indicating other crimes; 5) it is intended to prejudice defendant's case; and 6) it is prejudicial to defendant's rights at trial. *Bruner v. State*, 612 P.2d 1375, 1378 (Okl.Cr.1980).

■ Viewing the statement in context, it can be seen that this statement was not willfully make, it did not interject any implication about other crimes, it was not intended to injure defendant's case, nor was it prejudicial to defendant's rights. Furthermore, the evidence was of value to the trier of fact, and it was evidence of a nature that it would not have been objectionable had it been in response to a direct question. A "evidentiary harpoon" does not exist. This assignment of error is without merit.

Appellant's fourth assignment of error is that his case was improperly prejudiced by prosecutorial statements during closing arguments. We note that the complained of statements were objected to, these objections were sustained, and the jury was properly admonished to disregard these comments. No prejudice resulted to appellant's defense. This assignment of error is also without merit. *Kitchens v. State*, 513 P.2d 1300 (Okl.Cr.1973).

■ Appellant's fifth and final assignment of error is that the sentence, which is the maximum penalty available under the law, 63 O.S.Supp.1985, § 2–401(B), is excessive. Considering the gravity of the crime for which appellant was convicted, and the fact that the sentence is within the statutory limits, the penalty imposed upon the appellant is not so great as to shock the conscience of this Court. *Hickman v.*

*State*, 626 P.2d 873 (Okl.Cr.1981). This assignment of error is without merit.

Finding no error warranting reversal or modification, judgment and sentence is AFFIRMED.

BRETT, P.J., and PARKS, J., concur in results.