J-S42033-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LEWIS MARTIN MARTIN, | : | |
| | : | |
| Appellant | : | No. 20 MDA 2018 |

Appeal from the Judgment of Sentence December 1, 2017
in the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0005151-2016

BEFORE: BOWES, J., MCLAUGHLIN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.: **FILED: OCTOBER 17, 2018**

Lewis Martin Martin (Appellant) appeals from the judgment of sentence entered on December 1, 2017, following his jury convictions for indecent exposure and corruption of minors. Upon review, we affirm.

The relevant facts and procedural history have been summarized by the trial court.

> On September 23, 2016, a criminal complaint was filed charging [Appellant] with indecent exposure and corruption of minors. The basis for the charges was an allegation that [Appellant] exposed his penis to the victim, L.M.[, born April 2006], in June 2015 in East Cocalico Township, Lancaster County. A preliminary hearing was held on October 5, 2016, at which time the charges were waived over to the Court of Common Pleas.
>
> On July 19, 2017, the Commonwealth filed a petition to admit testimony under the "tender years hearsay exception," 42 Pa.C.S.[] § 5985.1. The victim, L.M., was interviewed by Christina Vernerick, a forensic interviewer at the Lancaster County Children's Alliance.[2] This interview was videotaped. During this interview, L.M. disclosed that [Appellant] exposed his

---

* Retired Senior Judge assigned to the Superior Court.

penis to him. A "tender years" hearing was scheduled for the time of trial.[3]

_____

[2] Lancaster County Children's Alliance is a child advocacy center where investigations of child abuse are conducted through forensic interviews of children who have been referred either by the Children & Youth Agency or a law enforcement agency. The aim is to minimize the number of interviews a child must endure surrounding allegations of child abuse.

[3] The "tender years" hearing never took place as the Commonwealth chose not to have the minor victim testify at trial, nor to introduce the victim's interview with Children's Alliance.

On July 20, 2017, the Commonwealth gave notice of its intent to introduce evidence of prior bad acts pursuant to Pa.R.E. 404(b)([3]). The older brothers and sisters of L.M. disclosed that when they were around the same age as the victim, [Appellant] exposed his penis to them as well.[4] These actions resulted in [Appellant] being charged at Docket No. [CP-36-CR-000]0432-2010 with indecent exposure and corruption of minors. [Appellant] pleaded guilty to the charges in January 2011, and was sentenced to time-served to 23 months' incarceration, followed by three years' probation. [Appellant] was subsequently charged with a probation violation and sentenced on December 30, 2011, to time–served to 23 months' incarceration, with a consecutive one-year probation term. [Appellant] was ultimately released from probation on October 10, 2014. [One of t]he incident[s] with L.M. occurred approximately two weeks after [Appellant] was released from probation for exposing himself to L.M.'s older siblings.[1] The Commonwealth intended to introduce evidence of Appellant's prior bad acts against his other nieces and nephews to show the common scheme and plan, opportunity, knowledge, and absence of mistake. *See* Pa.R.E. 404(b)(2).

_____

[1] The record indicates that Appellant was initially also charged with exposing himself to L.M. in October 2014, but the criminal information was amended to limit the charge to only the June 2015 incident. N.T., 8/30/2017, at 11-13.

<sup></sup>
4 Specifically, J.M. [born September 2001] disclosed that when she was around the ages of six to nine, [Appellant] exposed his penis to her multiple times in the barn and shed, and would touch his penis. R.M. [born May 1999] disclosed that when she was nine years old and younger, [Appellant] would expose his penis to her in the barn and would touch his penis. C.M. [born December 1996] disclosed that when she was between the ages of six and eight, [Appellant] would expose his penis to her in the barn and would touch his penis. M.M. [born September 1992] disclosed that when he was ten years old and younger, [Appellant] exposed his penis to him on multiple occasions.

This case went to trial on August 30, 2017. Immediately prior to trial, [the trial court] heard argument on the prior bad acts request by the Commonwealth. [The trial court] ruled at that time that M.M., the minor victim's older brother, would be permitted to testify to the fact that Appellant repeatedly exposed himself to his nephew, M.M., when he was just a child. This evidence would be admissible to show an absence of mistake and intent. [The trial court] further ruled that should the defense argue that Appellant did not know that his actions would affront or alarm or tend to corrupt the minor victim, then the door would be open to the Commonwealth's introduction of Appellant's prior convictions for indecent exposure and corruption of minors. Defense counsel objected to the admission of such prior bad acts testimony.

At trial, the Commonwealth presented the testimony of M.M., Detective Keith Neff of the East Cocalico Township Police Department, and portions of the audio[-]recorded statement of Appellant's police interview. M.M. testified to the fact that he walked in on Appellant exposing his penis to L.M. He further stated that he immediately told his mother about the incident. M.M. also testified that when he was between the ages of 5 and 10 years old, Appellant exposed himself "maybe 20 times" and spoke to M.M. in a sexual manner.

Detective Neff testified that, after signing the ***Miranda***[2] warnings form, Appellant agreed to an interview. Portions of Appellant's audio[-]recorded statement were played for the jury. Appellant acknowledged in his police interview that M.M. is a truthful person. Appellant would neither admit nor deny the charged criminal activity because he said he had no memory or recollection of the alleged events.

The defense presented no testimony or evidence. Following deliberations, the jury returned a verdict of guilty on both charges. Following the verdict, sentencing was deferred pending a pre-sentence investigation.

On December 1, 2017, [Appellant] appeared for sentencing. [The trial court] imposed concurrent sentences of 9 to 23 months' incarceration followed by three years' probation for the indecent exposure and corruption of minors convictions. As Appellant had already been in prison for over nine months awaiting trial, Appellant was made immediately eligible for parole for admission to an inpatient treatment program that would address his psychiatric, psychological or behavioral issues related to these charges. Restitution in the amount of $1,000.00 was imposed.[5] [Appellant] was ineligible for a Recidivism Risk Reduction Incentive (RRRI) sentence, and his ineligibility was not waived by the Commonwealth.

_____

[5] [Appellant] was ordered to reimburse the Pennsylvania Department of Revenue $1[,]000.00 for the forensic examination of the minor victim, L.M.

Trial Court Opinion (TCO), 2/1/2018, at 1-5 (citations to the record omitted).

_____

[2] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

Appellant timely filed a notice of appeal,[3] and both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant argues that "the trial court erred in allowing M.M. to testify that [Appellant] had exposed himself to M.M. several years prior in violation of Pa.[R.E.] 404(b) where this testimony was not relevant to a legitimate purpose and any probative value it may have had was outweighed by the unfair prejudice to [Appellant]." Appellant's Brief at 4. We consider this issue mindful of the following.

> The admission or exclusion of evidence is a matter vested in the trial court's sound discretion, and we may reverse the court's ruling only upon a showing of a clear abuse of that discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law or an exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Our scope of review is limited to an examination of the trial court's stated reason for its decision.

***Commonwealth v. Wattley***, 880 A.2d 682, 685 (Pa. Super. 2005) (citations and quotation marks omitted).

> Relevance is the threshold for admissibility of evidence. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

---

[3] Appellant had 30 days from entry of the trial court's sentencing order on December 1, 2107 to file his notice of appeal, but the last day of his appeal period fell on a Sunday (December 31, 2017) and the following day was a holiday (January 1, 2018). Thus, Appellant timely filed his notice of appeal on January 2, 2018. ***See*** 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday…, such day shall be omitted from the computation.").

Pa.R.E. 401. "Evidence that is not relevant is not admissible." Pa.R.E. 402. In addition, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403; *see* *Commonwealth v. Kouma*, 53 A.3d 760, 770 (Pa. Super. 2012) (stating that even when evidence meets the relevance requirements, "such evidence may still be excluded where its probative value is outweighed by the danger of unfair prejudice[]").

> However, [e]vidence will not be prohibited merely because it is harmful to the defendant. [E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based on something other than the legal propositions relevant to the case…. This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand[.]

*Kouma*, 53 A.3d at 770 (citation omitted); *see* Pa.R.E. 403, cmt. (defining "unfair prejudice" as "a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially[]").

*Commonwealth v. McCarthy*, 180 A.3d 368, 377 (Pa. Super. 2018) (some citations omitted); *see also Commonwealth v. Dillon,* 925 A.2d 131, 141 (Pa. 2007).

Our rules provide further direction when the evidence relates specifically to other crimes, wrongs, or acts.

**(b) Other crimes, wrongs, or acts.**

> (1) *Prohibited Uses.* Evidence of a crime, wrong, or other act is not permissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404 (b)(1)-(2). In addition,

> while evidence of prior bad acts may be relevant and admissible, there is the potential for misunderstanding on the part of the jury when this type of evidence is admitted. This evidence must, therefore, be accompanied by a cautionary instruction which fully and carefully explains to the jury the limited purpose for which that evidence has been admitted.

*Commonwealth v. Weiss*, 81 A.3d 767, 798 (Pa. 2013) (internal citations and quotation marks omitted); *see also Commonwealth v. Cousar*, 154 A.3d 287, 304 (Pa. 2017) (stating that "where evidence of a defendant's prior bad acts is admitted, the defendant is entitled to a jury instruction that the evidence is admissible only for a limited purpose"). Jurors are presumed to follow the trial court's instructions. *Commonwealth v. Hairston*, 84 A.3d 657, 666 (Pa. 2014).

Appellant argues that "[t]he fact that this happened to M.M. years prior was not relevant to the instant case and whether or not [Appellant] had exposed himself to L.M." Appellant's Brief at 12. He further argues that the evidence was "simply used to impress upon the jury that [Appellant] had acted in this manner before, so he must have acted this way again" and "just because [Appellant] exposed his penis to M.M. years prior does not mean he intended to show it to L.M. on this occasion." *Id.* Finally,

- 7 -

Appellant contends that even if the evidence were admissible, it was unfairly prejudicial. *Id.* at 13.

Pursuant to Pa.R.E. 404(b)(2), the trial court admitted Appellant's prior other acts against M.M. "to show intent and lack of mistake or accident." TCO, 2/1/2018, at 7-8, *citing* N.T., 8/30/2017, at 49-50. The trial court further found that the evidence was admissible as "the crimes are so related that proof of one tends to prove the others."[4] *Id.* at 8 (citation and quotation marks omitted). Finally, the trial court held that the probative value of the evidence outweighed its prejudicial effect. *Id.* at 9.

With respect to the common plan and lack of mistake or accident exceptions, which are interrelated, this Court has explained that

> [w]hen ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact

---

[4] This language is consistent with the "common plan" exception, discussed *infra*. *See Commonwealth v. Tyson*, 119 A.3d 353 (Pa. Super. 2015) (*en banc*).

that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive. Finally, the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact. To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

*Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 987 (Pa. Super. 2007).

Although "remoteness in time is a factor to be considered in determining the probative value of other crimes evidence under the theory of common scheme, plan or design, the importance of the time period is inversely proportional to the similarity of the crimes in question." *Commonwealth v. Aikens*, 990 A.2d 1181, 1185 (Pa. Super. 2010) [] (holding evidence of defendant's prior sexual assault was admissible under common scheme exception despite nearly ten-year gap between periods of abuse, where victims were of similar age and both were daughters of defendant; defendant initiated contact with each victim during overnight visit in his apartment; defendant began sexual abuse by showing victims pornographic movies; and assaults occurred in bed at night). *See also Commonwealth v. Luktisch*, [] 680 A.2d 877 ([Pa. Super.] 1996) (holding common scheme exception justified admission of testimony regarding defendant's previous sexual assaults despite six-year lapse between periods of abuse, where three victims were nearly same age, victims were either daughter or step-daughter of defendant and lived with him when acts occurred; and pattern of molestation—from improper touching to oral sex to sexual intercourse—was highly similar with respect to two victims).

Evidence of a prior crime may also be admitted to show a defendant's actions were not the result of a mistake or accident, where the manner and circumstances of two crimes are

remarkably similar. *See Commonwealth v. Sherwood*, [] 982 A.2d 483 ([Pa.] 2009) (holding evidence of defendant's prior physical assaults of child was admissible to show absence of mistake or accident in prosecution for intentional beating death of child); *Commonwealth v. Boczkowski*, [] 846 A.2d 75 ([Pa.] 2004) (holding evidence of defendant's murder of former wife was admissible to show absence of accident in prosecution for murder of defendant's second wife, where both victims were found dead in bathtub or hot tub in highly similar circumstances).

*Tyson*, 119 A.3d at 358–59 (some internal citations and quotation marks omitted).

Here, there are several victims who were the subject of the Commonwealth's notice of intent to introduce evidence of Appellant's prior acts. The victims are all siblings and Appellant is their uncle. Commonwealth's Notice of Intent to Introduce Evidence of Prior Bad Acts, 7/20/2017, at ¶ 2; N.T., 8/30/2017, at 78. L.M. is the victim in this case. J.M., R.M., and C.M. are victims from Appellant's prior convictions, in January 2011, for indecent exposure and corruption of minors. *Id.* at ¶ 9. It appears that M.M. was not a subject of Appellant's prior convictions. *Id.* The Commonwealth sought to admit evidence of Appellant's prior other acts against all of these nieces and nephew, J.M., R.M., C.M., and M.M. *Id.* at ¶ 12. However, the trial court limited the evidence admissible to only Appellant's prior acts against his nephew, M.M.[5] TCO, 2/1/2018, at 3, citing

_____

[5] The trial court also ruled that if Appellant argued he did not know exposing his penis to L.M. would affront, alarm or tend to corrupt the minor victim,
*(Footnote Continued Next Page)*

N.T., 8/30/2017, at 50-51.  At trial, M.M. testified, *inter alia*, that when he was between the ages of five and ten, Appellant exposed his penis to M.M. on about 20 different occasions when the two of them were alone.  N.T., 8/30/2017, at 83-84, 95-96.  M.M. also testified that when he was a child, Appellant talked to him in a sexually suggestive manner.  *Id.* at 97, 99.

In deciding that the evidence of Appellant's prior acts against M.M. was admissible, the trial court explained that

> Appellant suggested that L.M. misinterpreted his acts as having sexual purpose.[6]  The testimony of the other victim, M.M., about Appellant's indecent exposure was admissible to demonstrate that Appellant's actual intent in removing his penis from his pants was not to simply urinate[,] but to show his penis to a 9-year old child for his own sexual gratification.  Moreover, M.M.'s testimony was admissible to show that Appellant's penis did not just accidentally come out of his pants.  Rather, it was a deliberate and intentional act in this instance as it had been years previously with M.M.  *See* N.T., [8/30/2017,] at 84.
>
> ───────────
> [6] Defense counsel suggested that Appellant might have exposed his penis to L.M. and his siblings when urinating.  He further implied that corn fodder, which might have been stuck to Appellant's clothing, had the appearance of a penis.  N.T., [8/30/2017,] at 94-95.

TCO, 2/1/2018, at 8 (some citations and quotation marks omitted).

We agree with the trial court that evidence of Appellant's prior acts against M.M. was relevant and admissible.  Admission of Appellant's prior

*(Footnote Continued)* ─────────────

the door would be open for the Commonwealth to introduce evidence of Appellant's prior convictions relating to J.M., R.M., and C.M.  TCO, 2/1/2018, at 3.  No evidence of Appellant's prior convictions was introduced at trial.

acts of exposing his penis, on multiple occasions, to his nephew, M.M., demonstrates Appellant's awareness that exposing his penis to his nephew, L.M., was not a mistake or accident. Appellant's actions had significant similarities suggesting that Appellant planned intentionally to take advantage of a familial relationship and exposed his penis while he was alone with a young nephew in a small outbuilding on the family farm where they lived. The manner and circumstances of the incidents are nearly identical as to time, place, and type of victim: both victims are Appellant's nephews; Appellant committed the same acts against M.M. as he did against L.M. (exposing his penis); he committed them when M.M. and L.M. were about the same age (10 years old and younger); and he committed them in the same location (in a building on the family farm). *See Tyson*, *supra*. Thus, the challenged evidence was relevant to prove that the acts against L.M. were intentional, rather than a mistake or accident, and that the factual overlap between the two victims reflects a distinct pattern of Appellant intentionally exposing his penis to young nephews while they were isolated from other family members.[6] *Id.*

_____

[6] We note that, while Appellant has not raised an issue as to remoteness in time, we do not find the evidence of prior acts against M.M. to be too remote in time to negate its probative value. The remarkable similarities between the acts against M.M. and L.M. render the time gap less important. *See Tyson*, 119 A.3d at 359, *quoting Aikens*, *supra* (explaining that, while "remoteness in time is a factor to be considered in determining the probative value of other crimes evidence under the theory of common scheme, plan or
*(Footnote Continued Next Page)*

We now consider whether the trial court erred in concluding that "the probative value of the evidence outweighed its prejudicial effect." TCO, 2/1/2018, at 9. Appellant argues that M.M.'s testimony was "highly prejudicial" because it "clearly tended to suggest to the jury to make a decision on an improper basis: being that he must have exposed himself to L.M. since he had done it before" and it "suggested to the jury that because [Appellant] had done it so many times in the past, it was likely he had done it again." Appellant's Brief at 13.

In this case, evidence that Appellant had previously exposed his penis under nearly identical circumstances is certainly probative. However, we must still consider whether its admission was unduly prejudicial. *Commonwealth v. Gordon*, 673 A.2d 866, 870 (Pa. 1996); *Commonwealth v. Diehl*, 140 A.3d 34, 41 (Pa. Super. 2016) ("The admission of evidence becomes problematic only when its prejudicial effect creates a danger that it will stir such passion in the jury as to sweep [it] beyond a rational consideration of guilt or innocence of the crime on trial.").

The trial court here explained that

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯

design, the importance of the time period is inversely proportional to the similarity of the crimes in question"). In addition, Appellant was incarcerated for several years during the time at issue. *See Tyson*, 119 A.3d at 361 (stating that "time spent in prison must be excluded in the calculation of how much time has elapsed since the prior crime"); *see also Aikens, supra* (holding ten-year lapse was not excessive); *Luktisch, supra*. Moreover, remoteness in time is "only one factor in the common scheme analysis, but not the dispositive factor." *Tyson*, 119 A.3d at 361.

Although evidence of the prior indecent exposure on the victim, M.M., may have been prejudicial, it was not unduly so. As noted…, "'[u]fair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 *cmt*. The indecent exposure evidence, introduced for legitimate purposes, was not so prejudicial that it likely diverted the jury's attention away from its duty of weighing the evidence impartially.

Moreover, "[w]hether relevant evidence is unduly prejudicial is a function in part of the degree to which it is necessary to prove the case of the opposing party." ***Commonwealth v. Gordon***, [] 673 A.2d 866, 870 ([Pa.] 1996). Here, the Commonwealth was required to prove indecent exposure, which includes knowingly exposing one's genitals "under circumstances in which [the perpetrator] knows or should know that this conduct is likely to offend, affront or alarm." 18 Pa.C.S. [] § 3127(a). ***See also Commonwealth v. Thiry***, 919 A.2d 961, 963 (Pa. Super. 2007). Appellant denied that the exposure occurred, and since the uncorroborated testimony of the victim in this case might have reasonably led a jury to determine that there was a reasonable doubt as to whether Appellant committed the crimes charged, it was fair to conclude that the other [prior acts] evidence was necessary for the prosecution of the case. Without doubt, the [prior acts] evidence was prejudicial to Appellant. That is what it is designed to be. On the facts of this case, however, it was not unduly prejudicial, as it was required for the Commonwealth's case. Moreover, it is "[t]he function of the trial court … to balance the alleged prejudicial effect of the evidence against its probative value and it is not for an appellate court to usurp that function." ***Commonwealth v. Parker***, 882 A.2d 488, 492 (Pa. Super. 2005), *aff'd on other grounds*, [] 919 A.2d 943 ([Pa.] 2007).

TCO, 2/1/2018, at 9-11.

We recognize M.M.'s testimony was prejudicial to Appellant. However, it was not such that it was an error of law or abuse of discretion for the trial court to believe a jury would be able to look past the particulars of Appellant's prior acts and to consider the evidence only for the purpose for

- 14 -

which it was permitted. The evidence was critical in establishing the absence of mistake or accident and a common scheme or plan. The degree of similarity established between the incidents of criminal conduct and the Commonwealth's need to present the evidence weigh against any prejudicial impact. ***See Tyson, supra***.

Moreover, the trial court provided the jury with a limiting instruction regarding M.M.'s testimony and emphasized the limited purpose for which the evidence was admissible, thereby minimizing any prejudicial effect. ***See Weiss***, 81 A.3d at 798. Specifically, the trial court instructed the jury at the close of evidence that this evidence was to be used only for the limited purpose of showing Appellant's intent and absence of mistake or accident. The court further cautioned that it was not be considered for any other purpose other than what the trial court stated, and it must not be regarded as showing Appellant "is a person of bad moral character or criminal tendencies for which [the jury] might be inclined to infer guilt." N.T., 8/30/2017, at 141. The jury was advised at trial that the challenged evidence could not be considered to establish that Appellant had a propensity to commit a crime, and as we have noted, "the jury was free to accept or reject the evidence and to give it whatever weight it felt it deserved." ***Commonwealth v. Kinard***, 95 A.3d 279, 287 (Pa. Super. 2014); ***see also Hairston***, 84 A.3d at 666 ("Jurors are presumed to follow the trial court's instructions."). Accordingly, based on the foregoing, we

conclude that the evidence was not unduly prejudicial here. Thus, the trial court did not abuse its discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/2018