**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Diane LUALLEN, Defendant-Appellant.**

**No. 12524.**

Missouri Court of Appeals,
Southern District,
Division Two.

May 26, 1983.

Motion for Rehearing Overruled and to Transfer to Supreme Court Denied June 17, 1983.

Application to Transfer Denied Aug. 16, 1983.

John D. Ashcroft, Atty. Gen., Janet E. Papageorge, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Debra Sterling Hans, Asst. Public Defender, Springfield, for defendant-appellant.

PREWITT, Judge.

Following jury trial defendant was convicted of felonious restraint. § 565.120, RSMo 1978. Thereafter, she was found to be a "persistent offender", § 558.016, RSMo 1978, and was sentenced to seven years' imprisonment. Defendant was charged with using a butcher knife to force another woman, Dianna Hall, to drive her in a motor vehicle from Springfield to Kimberling City. Hall testified that defendant pulled the butcher knife from a large paper sack and threatened her with it.

Defendant asserts in her first point that the trial court erred in failing to grant her motion for a mistrial because the assistant prosecuting attorney representing the state "brandished a large 14-inch butcher knife: in the first instance, to the assembled panel of veniremen in the hallway of the courtroom; and, subsequently, to the jury during his opening statement."

The record reveals that the following occurred as the prosecuting attorney was relating the evidence in making the state's opening statement:

"[A]nd the defendant pulls a butcher knife,—(counsel holding up knife) which I believe the evidence will show that this (indicating) is the butcher knife. She pulls the butcher knife, and tells Dianna Hall, 'You're taking me to Kimberling City. I—don't want to hurt you, but I will, if necessary. You're taking me to Kimberling City.' "

Following the conclusion of the state's opening statement, defendant's attorney moved for a mistrial on the grounds asserted in this point. The request was denied. The knife was identified as the knife used by defendant and was received in evidence without objection.

█ The drastic nature of a mistrial requires that it be granted only in extraordinary circumstances where the prejudicial effect cannot be removed in any other way, and such a determination rests largely within the discretion of the trial judge. *State v.*

*Dees,* 639 S.W.2d 149, 159 (Mo.App.1982). As the knife was subsequently admitted into evidence, we see no prejudice to defendant and cannot say that the trial court abused its discretion in not granting a mistrial. Point one is denied.

For her second point defendant contends that the trial court erred in failing to grant her a continuance because of the serious illness of a "material witness" for her. Defendant's mother was involved in a serious automobile accident a week before the trial commenced and was in critical condition in the hospital at the time of trial.

On the morning of trial defendant's counsel made an oral motion for continuance on several grounds, including that defendant's mother was in critical condition. He asked for a continuance "in view of the fact that she may be a witness in this case, and has been a valuable aid to me in the investigation of this case, and has interviewed three or four witnesses, and talked with me on the phone numerous times and supplied me with some tape recordings of her investigation in this matter, giving me the background, and so forth, and in view of the fact that my client is indigent, is in—and is in jail, and is unable to investigate the case on her own". Defendant's point is limited to the contention that she was prejudiced because her mother was unable to testify at the trial.

█ A trial court has broad discretion in granting or denying a continuance, and its decision will not be reversed unless there is an abuse of discretion. *Phillips v. State,* 639 S.W.2d 270, 275 (Mo.App.1982). Unless a party requesting a continuance because a witness is unavailable shows the materiality of the evidence sought to be obtained and the particular facts the witness will prove, a trial court does not abuse its discretion by denying the continuance. Id. 639 S.W.2d at 275–276. See also Rule 24.10. Before refusal to grant a continuance will constitute an abuse of discretion, a defendant must demonstrate that denial of the continuance prejudiced his defense. *State v. Lane,* 551 S.W.2d 900, 906 (Mo.App.1977). No facts that the witness might testify to were shown here, nor has defendant shown how

the denial prejudiced her defense. The trial court did not abuse its discretion in denying the continuance.

In her third point defendant contends that the trial court erred in overruling her motion for a new trial because after the trial she was advised of evidence that at a new trial would probably produce an acquittal. In her motion for new trial defendant alleged:

"That the Defendant is advised, informed and believes that there are one or two white male individuals who were tenants at the Oak Rest Motel on West Sunshine on the night of August 26 or 27, 1981, who may have seen Defendant with a large paper sack, look in the sack and discovered personal items of Defendant and specifically would testify that there was no large butcher knife contained therein, and that such newly discovered evidence would constitute grounds for a new trial herein."

■ For defendant to obtain a new trial on the basis of newly discovered evidence, she must show: (1) the evidence must have come to her knowledge after the end of the trial; (2) not learning of it before then was not due to any want of due diligence on her part; (3) the evidence is so material that it will probably produce a different result on a new trial; and (4) the evidence is not cumulative only or merely of an impeaching nature. *State v. Dizdar*, 622 S.W.2d 300, 303 (Mo.App.1981). Although contending that this was "newly discovered evidence" the motion does not allege that it came to the knowledge of the defendant after the trial ended. However, whether requirements (1), (3), and (4) were met

makes no difference here, as clearly there was no allegation or proof of requirement (2). Point three is denied.

Defendant's fourth point contends that the trial court erred in failing to grant a mistrial when a witness for the state, Detective Merrill Coffman, of the Springfield Police Department was permitted to testify as to alias names given by defendant. Defendant commences the argument portion of her brief, stating:

"Detective Merrill Coffman of the Springfield Police Department was allowed by the trial court, over the objection of defendant, to testify as to alias names of defendant (Tr. 344)."

No other reference to his testimony was made in defendant's brief. Page 344 of the transcript is set forth below.*

■ Neither there nor elsewhere in the detective's testimony did he testify to any other names used by defendant nor was any request for mistrial or objection made by defendant during his testimony. By failing to make a timely request for a mistrial defendant has not preserved this point for review. *State v. Fanning*, 647 S.W.2d 177, 178 (Mo.App.1983). Nor do we see how the matters complained of in this point could have justified a mistrial or how they could constitute plain error. They are not so serious that they could create manifest injustice or miscarriage of justice. See Rule 30.20. This point is denied.

■ For her fifth point, defendant contends that the trial court erred in failing to specifically inquire of the jury if any member had read or heard any information about the trial because that failure resulted in denying defendant her right to a fair

---

* Q.  Why did you send her home on the 27th?
    A.  She was extremely nervous, crying, and she was just too upset to take a statement from at that time, in my opinion.
    Q.  To your knowledge, is this defendant in any way related to Bill McBee?
    A.  Not that I could determine. They was boy friend and girl friend.
    Q.  You did investigate that, didn't you?
    A.  Yes, sir.
    Q.  Did you include in your synopsis that at one time the defendant gave her name as Diane McBee?
    A.  She never did talk to me.

Q.  Okay.—
A.  —The other names came from what the officers—when they talked to her.
Q.  Okay.  Was that in your synopsis?
A.  I don't think so.
MR. AIKEN:  No further questions.
RECROSS EXAMINATION
Q.  (By Mr. Wampler) Detective Coffman, it's—it's the fact, is it not, that your synopsis in this case, which is about five pages, single spaced, is probably the most important document that you prepared, because it contains the raw data of your personal interview with the alleged

trial. Defendant asserts that on the evening of the first day of trial the Springfield News and Leader published an article concerning defendant's preliminary hearing which "was in fact totally false, as well as being highly inflammatory and prejudicial to the defendant's right to a fair trial. The article in question reported that the alleged victim had testified during the preliminary hearing that the defendant held a butcher knife to her throat on the night of August 27, 1981. This report was patently false and totally inaccurate." Defendant also contends that a similar article was published in the Springfield Daily News the following morning.

At 12:20 p.m. on October 14, 1981, the court declared a recess until 1:30 p.m., and after the jury had left the courtroom, defendant's counsel asked to make a record. Counsel mentioned the newspaper articles, stating that they contained "a false and completely inept review of the preliminary hearing". He stated that he was fearful that one of the jurors may have read it or it was read or mentioned to them. He asked "if the Court might inquire, specifically, whether they've had any trouble following the admonitions of the Court, specifically, regarding any newspaper articles." See MAI–CR 2d 1.08(a).

After further discussion, counsel further suggested to the court that the inquiry might be worded, "Have you had any difficulty following them, [the court's instructions] and have any articles been read to you, or anything been discussed". The judge stated that he would make that inquiry if counsel would remind him to do so when the jury came back from the luncheon recess.

Nothing further is shown in the record pertaining to the articles until 6:15 p.m. when the jury was excused for the evening. The trial judge cautioned the jury against reading any newspaper account of the trial or watching television, listening to the radio, or talking to anyone about the case. He then stated, "I might ask, in that connection, whether or not any—did any of you have any difficulty with that last night?" There was no response and then the judge stated that, "I take it all of you did follow the Court's admonition and—and did not violate the Court's order?" There was no response to that.

No further request for relief regarding the articles was made and the record does not show that either came to the attention of any of the jurors. It appears that the trial court attempted to comply with defendant's request without indicating that there were articles about the trial. Mentioning them might have caused some juror to search them out. Had defendant felt that other relief was appropriate, defendant should have pursued it. By not requesting further relief, defendant expressed apparent satisfaction with the action taken by the trial court, and her point is not preserved for appellate review. See *State v. Lane*, supra, 551 S.W.2d at 907–908; *State v. Woolford*, 545 S.W.2d 367, 372 (Mo.App. 1976); *State v. Platt*, 525 S.W.2d 637, 641 (Mo.App.1975). Point five is denied.

The judgment is affirmed.

MAUS, P.J., and HOGAN, J., concur.