**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Maurice PARKER, Appellant.**

Superior Court of Pennsylvania.

Submitted May 26, 2005.

Filed Aug. 18, 2005.

█

---

MaryAnn F. Swift, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before: DELSOLE, P.J., BENDER and OLSZEWSKI, JJ.

BENDER, J.

¶ 1 Maurice Parker (Appellant) appeals from the April 29, 2004 judgment of sentence imposed upon him following his conviction for attempted murder, aggravated assault, violations of the Uniform Firearms Act, and possessing an instrument of crime. The sole issue on appeal is wheth-

er the trial court abused its discretion in permitting, over a defense objection, the prosecutor to display a handgun in his opening statement.[1] We conclude that although the trial court abused its discretion, the resulting error was harmless. We do, however, caution against the use of such tactics by prosecutors in the future.

¶ 2 At approximately 11:30 p.m., on the evening of April 2, 2002, Ms. Sheila Crump was in the process of walking to a store located at 22nd and Oxford Streets in Philadelphia. While en route to the store, Ms. Crump saw her brother, Dwayne Crump, and his friend, James Washington, driving in a blue Chevrolet. N.T. Trial, 02/18/04, at 76. The two agreed to drive Ms. Crump to the store. When the car arrived at the store, Ms. Crump and her brother approached the store while Appellant was exiting the store. Ms. Crump testified at trial that Appellant and Dwayne gave each other an "odd look." *Id.* at 79. Dwayne then entered the store but Ms. Crump remained outside. Meanwhile, Appellant approached Mr. Washington, who had remained in the car, and asked him if Mr. Crump had a problem with Appellant. Then Appellant pulled up his shirt revealing a gun. *Id.* at 80.

¶ 3 An argument ensued, and Ms. Crump went into the store to tell her brother about the events unfolding outside between Mr. Washington and Appellant. Mr. Crump exited the store and told Appellant that everything was "cool." *Id.* at 81. Despite Mr. Crump's efforts to control the situation, Appellant and Mr. Washington continued to argue until Appellant pulled out the gun he previously had shown to Mr. Washington. *Id.* Ms. Crump and her brother attempted to enter

---

**1.** The trial court did not file a Pa.R.A.P. 1925(b) opinion because the trial judge is no longer sitting on the bench. Thus, we do not have the benefit of the court's reasoning for overruling the objection.

the vehicle from the passenger side doors, but stopped when Appellant began shooting at the vehicle from the driver's side. *Id.* at 82, 83. After the shooting began, Mr. Washington drove away and continued until he reached the hospital, where he received treatment for multiple gunshot wounds. Ms. Crump testified that Appellant shot his gun at the vehicle until there were no bullets left (she testified that she heard a "clicking" noise). *Id.* at 83. When Mr. Washington drove away in his vehicle, Ms. Crump and her brother ran home to their apartment building. *Id.* at 83, 84.

¶ 4 Three days later, on April 5, 2002, Ms. Crump was in the rental office of her apartment complex when she saw Appellant walking into the building next door. Ms. Crump testified that she immediately called the Housing Authority Police and told them that she had spotted the man who shot Mr. Washington days before. *Id.* at 85. Philadelphia Housing Authority Police Officers Stacey Alston and Rosalind Mason responded to the call, interviewed Ms. Crump, and thereafter, kept the apartment complex under surveillance. *Id.* at 142. Two hours later, the officers noticed Appellant as he left the apartment complex with his mother. The officers stopped Appellant, who was sixteen years old, and asked him why he was not in school. *Id.* Then the officers asked Appellant and his mother if they would walk over to the community center of the apartment complex in order to further question Appellant. *Id.* at 143.

¶ 5 During questioning, Officer Mason handcuffed Appellant out of concern for the safety of herself as well as Officer Alston because Appellant became very fidgety and nervous. *Id.* Appellant thereafter asked if he could use the restroom. While Appellant was in the restroom, Officer Alston, standing just outside, heard a "loud crash" in the commode and then heard Appellant's mother say, "What are you doing with that?" *Id.* at 145, 146, 154. Officers Alston and Mason entered the restroom and therein discovered a loaded .38 millimeter revolver in the commode. *Id.* at 145. The officers subsequently arrested Appellant and recovered the revolver. *Id.* at 146.

¶ 6 On February 18, 2004, a jury trial commenced. After two days of testimony, the jury convicted Appellant of the aforementioned crimes and Appellant was later sentenced to seven and one-half to fifteen years' incarceration. This timely appeal followed.

¶ 7 With regard to the sole issue he raises on appeal, Appellant argues that the trial court erred in overruling a defense objection to the display of the handgun by the prosecutor in his opening statement. He contends that such a display of trial evidence was unnecessary and inflammatory. Appellant's brief at 4.

¶ 8 During pre-trial discussions, the prosecutor informed the court that he intended to display the gun recovered from the restroom during opening arguments. N.T. Trial, 2/18/04, at 52. Defense counsel objected, stating that the gun would be produced during the course of trial and therefore, its use in the opening statement by the prosecutor would be unnecessary and prejudicial. *Id.* The trial judge stated that he knew of no authority prohibiting the prosecution to open in this manner, and thus, the defense motion to deny the prosecution the ability to do so was denied. *Id.* at 152, 153. Before the trial began, however, the judge instructed the jury that the opening statements by the lawyers did not constitute evidence but were simply a means by which they would learn what the case was about and what each side would attempt to prove. *Id.* at 56, 57.

¶ 9 Appellant presents for our review an issue of first impression in Pennsylvania, that being whether it is proper for a prosecutor to display or use as a prop, a potentially inflammatory piece of evidence during opening statements. Not only is this a matter of first impression in Pennsylvania, we have been able to locate only a handful of decisions in other jurisdictions that have addressed this issue on appeal.[2] As a result, there is no clear law on this matter, nor is there a clear standard of review for appellate courts. Therefore, by analogy, we borrow the standard of review applied in cases concerning the admissibility of evidence.

¶ 10 Determinations about the admissibility of evidence are entrusted to the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. *Commonwealth v. Lilliock*, 740 A.2d 237, 243 (Pa.Super.1999). In *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745 (2000), the Pennsylvania Supreme Court articulated the abuse of discretion standard applicable to all appeals:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Id.* at 753 (quoting *Coker v. S.M. Flickinger Co.*, 533 Pa. 441, 625 A.2d 1181, 1185 (1993)).

¶ 11 Trial judges generally enjoy broad discretion regarding the admission of potentially misleading or confusing evidence. *Daset Mining Corp. v. Industrial Fuels Corp.*, 326 Pa.Super. 14, 473 A.2d 584 (1984). Trial judges also have the authority to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or confusion. *Whistler Sportswear, Inc. v. Rullo*, 289 Pa.Super. 230, 433 A.2d 40 (1981). *See also* Pa.R.E. 403 ("Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury..."). Furthermore, the function of the trial court is to balance the alleged prejudicial effect of the evidence against its probative value, and it is not for an appellate court to usurp that function. *Commonwealth v. Bartlett*, 446 Pa. 392, 288 A.2d 796, 800 (1972).

¶ 12 In the instant case, the definition of what constitutes admissible evidence must be viewed in conjunction with the purpose

---

**2.** Those decisions not cited in the body of this Opinion include: *See e.g. State v. Luallen*, 654 S.W.2d 226, 228 (Mo.Ct.App.1983) (holding that the prosecutor displaying a butcher knife, that was later introduced into evidence without objection, to the jury during opening statements did not result in prejudice to the defendant); *Cheatham v. State*, 900 P.2d 414, 424 (Okla.Crim.App.1995) (holding it improper for trial court to allow the prosecution to use items, including a flashlight similar to the alleged murder weapon, during opening arguments to the jury, but finding that the defendant was not prejudiced by this display); *People v. Priester*, 102 A.D.2d 942, 942, 477 N.Y.S.2d 803 (1984) (holding that the failure of defense counsel to object to the prosecutor's display of a metal rod to the jury during opening statements did not deprive the defendant of a fair trial, nor did it deny the defendant "meaningful representation" at trial).

of opening statements in order to understand why allowing the prosecution to use the handgun in its opening statement constituted an abuse of discretion.

¶ 13 The purpose of an opening statement is "to [apprise] the jury [of] how the case will develop, its background and what will be attempted to be proved; but it is not evidence." *Commonwealth v. Nelson*, 311 Pa.Super. 1, 456 A.2d 1383, 1389 (1983). Although not evidence, an opening statement represents the first opportunity that the jury has to hear the facts of the case. Since the jurors' minds are essentially "blank slates" at this stage of the trial, opening statements can have a tremendous impact on the ultimate outcome of the trial. In fact, in *Commonwealth v. Montgomery*, 533 Pa. 491, 626 A.2d 109, 113 (1993), our Supreme Court commented that "the opening statement can often times be the **most critical stage** of the trial," because it is there where "the jury forms its first and often lasting impression of the case." (Emphasis added.) For this reason, we believe it is of paramount importance that the "playing field" be level during the opening statement and that displays which may tend to prejudice the jury should be prohibited. As the Supreme Court of New York, Appellate Division, Fourth Department, stated when a prosecutor used the stage of the opening statement to pull a shotgun from underneath his clothing to demonstrate the concealability of the weapon, "the image of the gun being dramatically removed from hiding beneath the prosecutor's clothing could

never be dispelled from the minds of the jury." *People v. Williams*, 90 A.D.2d 193, 196, 456 N.Y.S.2d 1008 (1982).

¶ 14 Rule 604 of the Pennsylvania Rules of Criminal Procedure governs opening statements and closing arguments.[3] However, this rule speaks only to the timing of the opening statements, not to the permitted content or use of evidence, displays, etc. We note that the trial judge was correct in asserting that no authoritative decision prohibited the prosecution during opening statements from displaying the gun, which would eventually be admitted into evidence without objection. Nevertheless, we find that we are compelled to agree with Appellant that the use of the handgun by the prosecution in its opening statement served no purpose but to possibly influence the jury and predispose the jury to finding the accused guilty of the crimes charged. The display of the gun by the prosecution could not honestly be said to serve any legitimate purpose except to inflame the jury, and therefore, the decision by the trial judge to permit such a display was unreasonable. This is especially true in light of the fact that counsel for Appellant acknowledged that the gun *would* later be used during trial, shown to the jury, and admitted into evidence.

¶ 15 While the caselaw on this subject is sparse, we believe some of the commentary offered by courts in other jurisdictions cogently argues against permitting the display of potentially inflammatory evidence.[4] In *Guerrero v. Smith*, 864 S.W.2d

---

3. Pa.R.Crim.P. 604 states, "After the jury has been sworn, the attorney for the Commonwealth shall make an opening statement to the jury. The defendant or the defendant's attorney may then make an opening statement or reserve it until after the Commonwealth has presented its case."

4. *But see e.g., Sherley v. Commonwealth*, 889 S.W.2d 794, 799 (Ky.1994) (stating that allow-

ing a prosecutor to display a photograph of the victim recovering in the hospital bed during opening statements was not error because photographs of the injuries of victims are admissible to show how the injuries were sustained); *People v. Green*, 47 Cal.2d 209, 302 P.2d 307, 311–12 (1956) (upholding the use of photographs of the murder victim and the defendant in prison garb during opening

797 (Tex.App.1993), during the opening statements of a medical malpractice case, plaintiff's counsel displayed a photograph of the injuries that were the subject of the suit. *Id.* at 799. The same photograph was later admitted into evidence without objection by the defense. The Texas Court of Appeals stated that the Texas Rules of Civil Procedure did not afford counsel the right to display any documents or photographs that he proposed to offer into evidence at trial during his opening statement.[5] *Id.* Moreover, the court acknowledged that where counsel is allowed to detail in such a manner the expectations of the case, he/she places matters before the jury without a determination of their admissibility. *Id.* The court ultimately held that because the photograph was later introduced without objection, the display of it by counsel for plaintiff during his opening statement was harmless error. *Id.* at 800. Despite the outcome, it is clear that the court disapproved of the practice; "[a]lthough this conduct should not have been tolerated by the trial court, we are bound by the abuse of discretion standard which gives trial courts wide latitude in limiting opening statements." *Id.*

¶ 16 The Court of Criminal Appeals of Oklahoma in *Wimberli v. State,* 536 P.2d 945, 951 (Okla.Crim.App.1975), was similarly critical of the prosecutor's actions in displaying a knife, later admitted into evidence, during opening statements. In that case, the court opined that the prosecutor's conduct was not "a model for emulation." *Id.* at 952. Nevertheless, the court refused to grant relief, concluding that the display was not prejudicial to defendant and thus, did not deny the defendant a fair trial. *Id. See also Ohio v. Hawn,* 2003 WL

22470962, 2–3, 2003 Ohio App. LEXIS 5219, 7 (Ohio Ct.App.2003) (same)

¶ 17 In contrast to the outcome of the *Smith* and *Wimberli* cases, in *People v. Williams, supra.,* the Supreme Court of New York, Appellate Division, Fourth Department, found reversible error when the prosecutor pulled the sawed-off shotgun from underneath his clothing during opening statements. While the court was obviously concerned that the demonstration tended to prove an essential element of the case—that the gun could be concealed—the court also expressed concern with the fact that the dramatic display would tend to form in the minds of the jurors an opinion of the defendant's guilt prior to the introduction of a single piece of evidence. As the court stated, it would be difficult for the image to be dispelled when it came time for the jury to deliberate.

¶ 18 Similarly, in the present case, we hold that it was error for the trial judge to allow the prosecution to use and display the gun during its opening statement. Opening statements are routinely conducted without visual aids and it was not necessary for the gun to be displayed in order for the jury to gain an overview of the case. On the other hand, the sight of the gun may possibly have created uneasiness, if not outright repulsion, among the jurors. Because the displaying of the gun served no constructive purpose and because the prejudicial effect of the display clearly outweighed any slight probative value, the court should have precluded the prosecutor from displaying the gun. However, given the overwhelming evidence of Appellant's guilt presented at trial, it is not reasonably probable to conclude that a dif-

---

statements, stating that it may aid the purpose of the opening statements).

5. Tx.R.CIV.P. 265(a) states, "The party upon whom rests the burden of proof on the whole

case shall state to the jury briefly the nature of his claim or defense and what said party expects to prove and the relief sought."

ferent result would have been reached if the prosecutor had not been allowed to display the gun. Therefore, we hold that the error by the trial court was harmless.

¶ 19 The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, but not necessarily a perfect or error-free trial. *Commonwealth v. Drummond,* 775 A.2d 849, 853 (Pa.Super.2001). An error may be deemed harmless by an appellate court where the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the error is so insignificant by comparison, that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict. *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155, 165–66 (1978). In other words, evidentiary rulings by a trial court which, in all likelihood, do not affect the verdict will not provide a basis for disturbing the jury's judgment. *Bryant v. Reddy,* 793 A.2d 926, 928 (Pa.Super.2002).

¶ 20 In the present case, one of the prosecution's witnesses, Ms. Crump, identified Appellant to police three days after the shooting occurred. N.T. Trial, 2/18/04, at 85. Ms. Crump also identified the gun in question as the gun that Appellant used in the shooting. *Id.* at 92. At trial, Police Officer Stacey Alston identified the gun as being the gun that Appellant attempted to dispose of in the restroom. *Id.* at 148. Additionally, Officer Bottomer, a member of the Firearms Identification Unit, testified that by examining the projectiles recovered from the vehicle and inspecting them in connection with the gun's markings, he determined that the projectiles recovered were shot from same revolver found to be in the possession of Appellant. *Id.* at 185. As such, the evidence of Appellant's guilt is overwhelming. Moreover, when we view the evidence of guilt in conjunction with the cautionary instruc-

tions given to the jury by the trial judge, warning that the remarks made during opening statements did not constitute evidence, this Court concludes that the effect that the display of the handgun had on the jury during the prosecutor's opening statements was slight compared to the weight of properly admitted evidence.

¶ 21 Judgment of sentence affirmed.

¶ 22 Judge OLSZEWSKI files a concurring opinion.

OLSZEWSKI, J., Concurring.

¶ 1 Undoubtedly, the majority has reached the correct destination in this appeal; I must, however, disagree with the route it has taken to get there. Specifically, I cannot see how the display of the weapon during opening statements prejudiced appellant in any manner. I can thus only concur in the result.

¶ 2 Here, the prosecutor chose to actually display the weapon during opening statements. Does that fact make this particular opening statement any different from one where the prosecution gives a verbal (but detailed) description of a weapon it will later introduce? Theoretically speaking, the answer is no: neither the weapon nor the description of the weapon is "evidence" at this point, and neither the weapon nor the description of the weapon is anything other than a reference to "facts that [the prosecutor] reasonably believes will be established at trial." *Commonwealth v. Begley,* 566 Pa. 239, 780 A.2d 605, 626 (2001).

¶ 3 Practically speaking, is there any difference? In cases such as this, where the weapon was later admitted into evidence and the jury was instructed to view opening statements as mere oratory, I am simply unable to see how a defendant can claim being "unfairly prejudiced" by a prosecutor's decision to display the weapon

during opening statements: the jury was going to see the weapon at some point, and the mere display during opening statements can only be considered allowable "oratorical flair."

¶ 4 The question of what to do had the weapon been inadmissible at trial is for another appeal. Suffice it to say, based upon the facts before us now, I believe that appellant was not prejudiced by the prosecution's display of the weapon during opening statements: the weapon was later properly introduced as evidence and the judge specifically told the jury that the lawyers' statements are just that, simply statements. Therefore, I concur in the result.