J-S27004-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                             :            PENNSYLVANIA
                                               :
             v.                       :
                                               :
                                               :
ROBERT WILLIAM SCHESTOK        :
                                               :
           Appellant              :     No. 179 EDA 2020

Appeal from the Judgment of Sentence Entered November 21, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0006961-2018

BEFORE:   SHOGAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.:         **FILED OCTOBER 09, 2020**

Appellant, Robert William Schestok, appeals from the judgment of

sentence entered by the Delaware County Court of Common Pleas on

November 21, 2019, following his conviction by a jury of indecent assault and

corruption of a minor.[1]  We affirm.

The trial court summarized the facts of the crimes and relevant history

as follows:

> Prior to trial, the Commonwealth filed a Petition to Admit
> Out-of-Court Statements Under the "Tender Years Hearsay
> Exception," 42 Pa.C.S. §5985.1.  The Commonwealth sought to
> introduce statements made by the minor child, S.P., to her
> mother, [J.D. ("Mother")]; to her mother's friend, [T.M.]; to
> Forensic Interviewer Susanne Whiting; and to Children and Youth
> Services caseworker, Crystal Maxwell.  The Commonwealth also

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3126(a)(7) and 6301(a)(1)(i), respectively.

filed a "Motion to Allow Child Witness to Testify under the Pennsylvania Uniform Child Witness Testimony by Alternative Methods Act." A hearing was held on said petitions on May 16 and May 17, 2019. At the hearing, counsel for both parties agreed to permit S.P. to testify outside the presence of the Appellant, by closed circuit television. With regard to the Petition to Admit Out of Court Statements under the Tender Years Hearsay Exception, the Commonwealth first presented the testimony of [Mother]. [Mother] testified that on January 20, 2017, she was at the Delaware County Courthouse with her longtime friend, [T.M.], and with S.P. for a custody hearing between her and her ex-husband, [N.P. ("Father")]. While [Mother] was in court, S.P. communicated to [T.M.] in the bathroom that [Appellant] told her that her "privacy" was like a house and people can go in and out. After returning home, [Mother] spoke to [T.M.] in more detail about what S.P. told her in the bathroom and then discussed it with S.P. While she was questioning S.P. about her statement, S.P. was putting on her underwear, thrusting upwards, and pointing to her privates stating, "[Appellant] said my privacy is like a house, people can go in and out." She said [Appellant] was someone who lived at dad's house. S.P. also stated that [Appellant] likes to watch her go to the bathroom and touched her there. She explained that [Appellant] touched her while in her bedroom and pointed to her backside. She said he touched her "hinny" and it hurt. Later that evening, [Mother] asked for a description of [Appellant]. S.P. explained that he is one of her dad's friends, an "army guy" who had short hair like [N.], her brother; was skinny and tall; and had a tattoo on his elbow. She pointed to her forearm when describing the elbow tattoo. [Mother] searched [Father's] Facebook profile for friends named Robert and found a person fitting the description given by S.P. She showed the picture to S.P. the next day. S.P. became panicked and "freaked out" and said that the picture did depict [Appellant]. S.P. later stated that [Appellant] peed on her leg and it didn't run off, she had to wipe it off.

Next, the Commonwealth presented the testimony of [T.M.] [T.M.] testified that while in the bathroom with S.P. at the Courthouse, S.P. asked her if there were locks on the bathroom door and asked her if she knew the people that lived at [Father's] house. After returning to [Mother's] house, [T.M.] testified, that she observed S.P. laying down with her legs in a triangle, stating it was a house and asking [T.M.] to come into her house. She was making pelvic movements and behaving in a sexual manner. S.P.

told her that people tried to get in the bathroom at [Father's] house and that [Appellant] liked to watch her pee. She also told [T.M.] that [Appellant] slept in her bed after [Father] went to sleep.

After the testimony of the live witnesses, the Commonwealth submitted to the court for review, the video recording of the forensic interview with Susanne Whiting. The court reviewed the video[,] which was taken on May 18, 2017. After initial introductions, Ms. Whiting asked about [Father]. In response, S.P. said her dad is a good person, but had bad people at his house. She explained [Appellant] is a bad person because he was arrested and is a drug addict. She then explained that [Appellant] was trying to touch her privates when she went to the bathroom. She said he touched her "peepee" with his hand. She said he was "digging it in" "back here and there[.]" She said it happened in the downstairs bathroom at [Father's] house. S.P. later stated that [Appellant] touched her bottom. Ms. Whiting gave S.P. a diagram of a girl's body for her to circle the parts of her body that [Appellant] touched. She explained [Appellant] touched her hair; touched her "boobs"; wiped his finger in her belly button; and put his finger inside her bottom[,] and it hurt.

Following the hearing on the Commonwealth's Petition to Admit Out-of-Court Statements Under the "Tender Years Hearsay Exception," 42 Pa.C.S, §5985.1, the court entered an order on August 5, 2019[,] granting said petition.

On May 20, 2019, counsel for Appellant filed a Motion for Immediate Release under Rule 600 for Incarceration in Excess of 180 Days. A hearing was held on July 1, 2019[,] on said Motion. The motion was granted by Order dated July 24, 2019. Appellant was ordered to be released on nominal bail with electronic home monitoring provided he first complete a psychosexual evaluation.

On October 29, 2019, counsel for Appellant filed another Rule 600 Motion for Dismissal for failure to bring the matter to trial within 365 days. The motion was addressed on October 30, 2019[,] and was denied.

Jury selection was conducted on October 30, 2019[,] and trial testimony began on October 31, 2019. The Commonwealth first presented the testimony of the victim, S.P. S.P. testified that [Appellant] was staying in the basement at her dad's house and

he touched her private part. She said her private part was her "jay jay" and pointed to her vagina. She explained that [Appellant] used his hand to touch her and it felt weird. She said [Appellant] would come in her bed and sleep there and that it happened in her bed. The Commonwealth showed S.P. a photograph, marked as Commonwealth Exhibit 1, depicting a man. S.P. said it was [Appellant]. She recognized his beard, tattoo, and remembers his hat.

The Commonwealth next presented the testimony of [Mother] and of [T.M.]. Both women testified consistent with their testimony at the Tender Years' Hearing regarding what S.P. told them happened with [Appellant]. The next Commonwealth witness was Detective Paul Corsi of the Criminal Investigation Division of the Delaware County District Attorney's Office. Detective Corsi testified that S.P.'s case was referred to him in the child abuse unit by the Ridley Township Police Department. Delaware County [Children and Youth Services ("CYS")] had indicated a child they interviewed made admissions of sexual assault. Through his investigation, Det. Corsi identified the Appellant as the suspect who was living at [Father's] home. Charges were subsequently filed against Appellant.

Susanne Whiting of the Delaware County Children's Advocacy Center testified for the Commonwealth next. Ms. Whiting testified that she interviewed S.P. After Ms. Whiting's testimony, the Commonwealth presented the testimony of Dr. June Flock-Messam. The parties stipulated to Dr. Messam as an expert in pediatric medicine with a specialty in child abuse. Dr. Messam testified that she examined S.P. in three different positions and her exam was normal. She said it was typical that, by the time a child presents for an exam, the child's exam is normal based on the passage of time. Dr. Messam also discussed her conversation with S.P. during the exam where S.P. stated that [Appellant] touched her "private" at [Father's] house. She described that it happened while she was in the bathroom with the door locked. [Appellant] got the key and came in. S.P. also told her that [Appellant] tried to sleep in her bed. Dr. Messam explained that S.P. was exhibiting signs of PTSD during the exam based on her hypervigilance in trying to find out who was in the doctor's office.

The final witness for the Commonwealth was CYS caseworker Crystal Maxwell[,] who testified that one of [Mother's]

- 4 -

children reported that "something happened." She talked to S.P. after the allegations were made. Following the Commonwealth's evidence, defense counsel moved for directed verdict/judgment of acquittal for lack of evidence. Said motion was denied.

The only witness presented by the defense was S.P.'s paternal grandmother, [D.P.], who testified that S.P. told her that her mom told her to say [Appellant] "did stuff" to her.

After all the evidence was presented, the case was given to the jury for deliberation. The jury returned a verdict of guilty on both counts. On November 21, 2019, the parties returned to court for sentencing. Defense counsel renewed his motion regarding sufficiency of the evidence. Said motion was denied[,] and the Court imposed the above referenced sentence.[2] Following sentence, counsel for Appellant made a motion pursuant to Pa.R.Crim.P. 607 regarding weight of the evidence. The motion was listed for a hearing on December 5, 2019[,] along with the Appellant's Motion for Reconsideration. Both motions were denied.

On December 31, 2019, defense counsel filed a Notice of Appeal to Superior Court from the imposition of sentence on November 21, 2019. On January 9, 2020, this court issued an order for a Statement of Matters Complained of on Appeal pursuant to Pa.R.A,P. 1925(b), which was provided by appellate counsel on January 22, 2020. In the 1925 Statement, Appellant raises ten allegations of error on appeal.

Trial Court Opinion, 3/11/20, at 1–6 (internal citations to the record omitted).

The trial court, as well, complied with Pa.R.A.P. 1925(a).

Appellant raises the following single issue for our review:

Whether the government failed to establish the jurisdiction of the Delaware County Court of Common Pleas to adjudicate [Appellant's] case, where the prosecution did not prove at trial

_____

[2] The trial court sentenced Appellant to time served to twenty-three months of imprisonment for indecent assault and a consecutive one-year term of probation for corruption of a minor. N.T. (Sentencing), 11/21/19, at 23–24.

that the alleged Indecent Assault and Corruption of Minors occurred within Pennsylvania's borders?

Appellant's Brief at 4.

Appellant's claim is a challenge to the trial court's subject matter jurisdiction, which presents a question of law "for which our standard of review is *de novo*." *Commonwealth v. Maldonado-Vallespil*, 225 A.3d 159, 161 (Pa. Super. 2019), *appeal denied*, ___ A.3d ___, 23 MAL 2020 (Pa. filed August 3, 2020) (citing *Commonwealth v. Bethea*, 828 A.2d 1066, 1071 n.5 (Pa. 2003)). Our scope of review is plenary. *Maldonado-Vallespil*, 225 A.3d at 161. This Court may affirm a judgment or verdict for any reason appearing of record. *Commonwealth v. Melvin*, 103 A.3d 1, 19 (Pa. Super. 2014). Moreover, although the Commonwealth bears the burden of proving facts sufficient to establish jurisdiction, "it may rely upon circumstantial evidence to meet this burden." *Commonwealth v. Passmore*, 857 A.2d 697, 709 (Pa. Super. 2004) (citation omitted).

Appellant's sole argument is that the Commonwealth failed to prove that the instant crimes occurred within Pennsylvania's borders. Appellant's Brief at 10. In support, he cites *Maldonado-Vallespil*, 225 A.3d 159. In that case, we held that the record was silent regarding the location where the theft of tools stored in a vehicle occurred, and that the Commonwealth failed to establish that any element of the crime of receiving stolen property occurred in Pennsylvania. *Id.* at 162. Indeed, the Commonwealth conceded as much. *Id.* Appellant posits that similarly, the instant record is devoid of evidence

establishing that he had indecent contact with S.P. or corrupted her morals

"within the Commonwealth's borders." Appellant's Brief at 13.

The trial court rejected Appellant's argument, and held as follows:

The jury heard during *voir dire* that the Appellant lived in Milmont Park. (N.T. 10/30/19, pp. 27-28)[.] Then, during the Commonwealth's opening statement, the jury learned that the alleged crimes occurred at [Father's] house in Milmont Park, Pennsylvania.[3] (N.T.,10/31/19, p.5)[.] On direct examination of Detective Paul Corsi, Detective Corsi testified that S.P.'s case was referred to him through Ridley Township Police. Jurisdiction of the court may be proven by circumstantial evidence. *Commonwealth v. Passmore*, 857 A.2d 697 (Pa. Super. 2004); *Commonwealth v. Nixon*, 2014 WL 10588383 (Pa. Super. 2014)[.] The jury was free, as the factfinder in this matter, to make the reasonable inference from the above information that the crimes were committed in Delaware County even though the Commonwealth did not specifically ask whether Milmont Park or Ridley Township are located in Delaware County, PA. *See, Commonwealth v. Nixon*, 2014 WL 10588383 (Pa. Super. 2014).

Trial Court Opinion, 3/11/20, at 14.

Unlike **Maldonado**, the instant record is not silent concerning where

Appellant's crimes occurred. Multiple witnesses testified consistently that S.P.

stated that Appellant digitally penetrated her vagina when she was at Father's

house. N.T., 10/31/19, at 33–42, 71, 163–164. Detective Corsi of the

**Delaware County** District Attorney's Office, Crystal Maxwell of **Delaware**

---

[3] The prosecutor's opening statement to the jury did not constitute evidence in the case. **See Commonwealth v. Parker**, 882 A.2d 488, 493 (Pa. Super. 2005) (The purpose of an opening statement is to apprise the jury how the case "will develop, its background and what will be attempted to be proved; but it is not evidence." Notably, we did not rely on the Commonwealth's opening statement in resolving the issue in this case.

**County** CYS, and Susanne Whiting of the **Delaware County** Children's Advocacy Center testified that the instant crimes occurred at Father's house. In particular, Detective Corsi testified that this case was referred to him from the Ridley Township Police Department. N.T., 10/31/19, at 158. Mother testified that Ridley Township is located in **Delaware County**. *Id.* at 63.

In the case *sub judice*, the jury drew the reasonable inference that Detective Corsi, Ms. Maxwell, and Ms. Whiting, all of whom were employed by Delaware County agencies, responded to crimes that occurred within their lawful jurisdiction. ***See Passmore***, 857 A.2d at 709 (Commonwealth may rely on circumstantial evidence to meet its burden of proving facts sufficient to establish jurisdiction). Thus, we reject Appellant's claim and affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/9/20